UNITED STATES of America,
Plaintiff–Appellee,

v.

James Ray ERWIN,
Defendant–Appellant.

No. 87–2475.

United States Court of Appeals,
Tenth Circuit.

May 16, 1989.

Stephen P. McCue, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Paula G. Burnett, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with her on the brief), D.N.M., Albuquerque, N.M., for plaintiff-appellee.

Before LOGAN and SEYMOUR, Circuit Judges, and ANDERSON, District Judge.*

LOGAN, Circuit Judge.

Defendant James Ray Erwin was charged with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and with aiding and abetting in violation of 18 U.S.C. § 2. He pleaded guilty to both charges, reserving the right to appeal the district court's denial of his motion to suppress the marijuana seized during his arrest. On appeal, defendant asserts that (1) the district court erroneously held that he lacked standing to challenge the stop and search of a car in which he was a passenger, (2) the traffic stop was a pretext to conduct an otherwise illegal search for drugs, and (3) his consent to the search was involuntarily elicited. We find it necessary only to address defendant's first two contentions, and we affirm the district court's denial of the motion to suppress.[1]

---

* The Honorable Aldon J. Anderson, Senior United States District Judge for the District of Utah, sitting by designation.

1. We note that this court originally questioned whether the notice of appeal was filed within ten days of the district court's judgment as re-

quired by Fed.R.App.P. 4(b). On June 11, 1987, the district court sentenced defendant to five years followed by a special parole term of two years, pending a study of the sentence under 18 U.S.C. § 4205(c) (repealed effective Nov. 1, 1987). After a study under § 4205(c) was con-

Defendant was a passenger in a station wagon automobile driven by co-defendant Robert Clevenger that was stopped by New Mexico State Police Officer Forrest Smith for traveling sixty-seven miles per hour in a fifty-five mile per hour zone. While requesting Clevenger's drivers' license and registration, Officer Smith noticed a strong scent of air freshener and observed that Clevenger was very nervous. Clevenger displayed a valid license but was unable to produce the automobile's registration. After informing Clevenger that he was going to issue a citation, Smith asked Clevenger what he was carrying in the back of the station wagon, and Clevenger responded that there were some clothes and baby items. Smith then asked if he could take a look, and Clevenger acceded.

Defendant, who was sleeping in the back seat, had awakened by this time. Both he and Clevenger got out of the vehicle, and defendant opened the rear door of the station wagon with a key from his pocket. Officer Smith felt some handbags lying in the back, and lifted up the edge of a carpet that covered the entire rear section of the vehicle. Smith then observed a sheet of glass partially covering what appeared to be doors leading to the tire well. The doors were sealed shut by four silver screws that did not appear congruous with the rest of the car's interior. Smith detect-

ed the odor of raw marijuana emanating from a crack in the doors not covered by the glass. Smith returned to his vehicle and radioed for assistance.

Smith subsequently discovered twelve plastic-wrapped packages of marijuana in the tire well and placed Clevenger and defendant under arrest. Both moved the court to suppress the marijuana seized from the car. After a hearing, the district court ruled that neither defendant had legitimate expectations of privacy in the car sufficient to confer standing to challenge the search. The court also found that the stop by Smith was not a pretext to conduct an illegal search for drugs and that the defendants had consented to the search.

### I

Defendant Erwin initially argues that the district court erred in finding he lacked standing to challenge the stop and subsequent search of the car. We believe that standing to challenge a stop presents issues separate and distinct from standing to challenge a search. Thus, defendant's challenge to the stop and search must be examined separately.[2]

### A

The Supreme Court has recognized that questions of "standing" to challenge a

ducted, the district court on September 23, 1987, affirmed the original sentence. Defendant filed a notice of appeal on October 1, 1987, within ten days of the resentencing.

Both the government and defendant argue that the appeal was filed timely. We agree. In *Corey v. United States*, 375 U.S. 169, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963), the Court held that under old 18 U.S.C. § 4208(b), the statutory precursor to § 4205(c) which contained virtually identical language, a defendant lawfully could file a notice of appeal either after the original sentencing or after the post-review sentencing, provided the filing was within ten days of either date. *Id.* at 174–76, 84 S.Ct. at 302–03. The legislative history of § 4205(c) indicates a congressional intent to preserve § 4208(b) in pertinent part. *See* S.Rep. No. 369, 94th Cong., 2d Sess. 22, and H.R.Conf.Rep. No. 838, 94th Cong., 2d Sess. 25, *reprinted in* 1976 U.S.Code Cong. & Admin. News 335, 344, 351, 357. We see no reason why *Corey* should not control our reading of § 4205(c). See *United States v. Meyer*, 802 F.2d 348, 350 (9th Cir.1986), *cert. denied,* —— U.S.

——, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987) (finding *Corey's* holding applicable to § 4205(c)).

**2.** Even if defendant lacks standing to challenge the search of the car, if the initial stop was illegal, the seized contraband is subject to exclusion under the "fruit of the poison tree" doctrine. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963); *United States v. Hill,* 855 F.2d 664, 666 (10th Cir.1988) (evidence found as fruit of an illegal arrest should be excluded); *United States v. Gonzalez,* 763 F.2d 1127, 1133 (10th Cir.1985) (illegal *Terry* stop results in suppression of "fruit of the unlawful detention"); *United States v. Durant,* 730 F.2d 1180, 1182 (8th Cir.) ("evidence obtained as a direct result of an illegal stop would be inadmissible under the 'fruit of the poisonous tree doctrine'"), *certs. denied,* 469 U.S. 843, 105 S.Ct. 149, 83 L.Ed.2d 87, 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 91 (1984); *United States v. Williams,* 589 F.2d 210, 214 (5th Cir. 1979) (same), *aff'd en banc,* 617 F.2d 1063 (1980).

search and seizure are "more properly subsumed under substantive Fourth Amendment doctrine." *Rakas v. Illinois,* 439 U.S. 128, 139, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978); *see United States v. Leary,* 846 F.2d 592, 595 (10th Cir.1988). The proper inquiry is whether a challenged stop and search violated the Fourth Amendment rights of a criminal defendant making the challenge. *See Rakas,* 439 U.S. at 140, 99 S.Ct. at 429. This inquiry requires a determination of whether the Fourth Amendment was designed to protect an interest of the defendant that was violated by the stop and search. *See id.* Thus, the question presented here is whether a passenger of a vehicle has sufficient Fourth Amendment interests to challenge a traffic stop of that vehicle.

■ We believe the traffic stop in this case implicates an interest of defendant that the Fourth Amendment was designed to protect. In challenging the stop, defendant is objecting to the seizure of his person, and the "Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of arrest." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). It is beyond dispute that a vehicle's driver may challenge his traffic stop, and we see no reason why a person's Fourth Amendment interests in challenging his own seizure should be diminished merely because he was a passenger, and not the driver, when the stop occurred. Drivers and passengers have similar interests in seeing that their persons remain free from unreasonable seizure. *Accord State v. Eis,* 348 N.W.2d 224, 226 (Iowa 1984); *see also United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985) ("stopping a car and detaining its occupants constitute a 'seizure' within the meaning of the Fourth Amendment"); *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979) (same). Furthermore, we reject any notion that a vehicular stop detains for Fourth Amendment purposes *only* the driver simply because the passenger may be free to depart. *See Berkemer v. McCarty,* 468 U.S. 420, 436, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317 (1984) ("It must be acknowledged at the outset that a traffic stop significantly curtails the 'freedom of action' of the driver and the passengers, if any, of the detained vehicle.... Certainly few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so.") (citation and footnote omitted). Thus, we conclude that defendant may challenge the legality of the traffic stop in this case.

### B

■ Before discussing the legality of the stop, we first consider whether defendant has standing to challenge the subsequent search by Officer Smith. Whether defendant can challenge the search requires a consideration of two primary factors: whether the defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as objectively reasonable. *See California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 1628, 100 L.Ed.2d 30 (1988); *Leary,* 846 F.2d at 595; *United States v. Paulino,* 850 F.2d 93, 97 (2d Cir.1988). In conducting this analysis, we must remember that Fourth Amendment rights are personal and a defendant cannot claim a violation of his Fourth Amendment rights based only on the introduction of evidence procured through an illegal search and seizure of a third person's property or premises. *Rakas,* 439 U.S. at 134, 99 S.Ct. at 425; *United States v. Skowronski,* 827 F.2d 1414, 1418 (10th Cir.1987). We conclude that defendant has not met his "burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search." *Id.* at 1417–18 (footnote omitted) (citing *Rakas,* 439 U.S. at 131 n. 1, 99 S.Ct. at 424 n. 1).

First, defendant does not claim that he owned the marijuana or secreted it away in the hidden compartment. Although ownership of the item seized is not determinative, it is an important consideration in determining the existence and extent of a defen-

dant's Fourth Amendment interests. *See, e.g., Rawlings v. Kentucky,* 448 U.S. 98, 105–06, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980); *United States v. Salvucci,* 448 U.S. 83, 91 & n. 6, 100 S.Ct. 2547, 2552 & n. 6, 65 L.Ed.2d 619 (1980); *Rakas,* 439 U.S. at 130 n. 1, 148, 99 S.Ct. at 424 n. 1, 433.[3] Defendant, however, contends that since he was charged with a possessory crime he must have an interest sufficient to challenge the search that uncovered it. This claim of "automatic standing" was rejected by the Supreme Court in *Salvucci,* when the Court "decline[d] to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area search." 448 U.S. at 92, 100 S.Ct. at 2553.

Second, defendant, who did not testify at the suppression hearing, failed to introduce any evidence to show legitimate ownership or possession of the automobile, which might establish a legitimate expectation of privacy in the particular area searched. *See Rakas,* 349 U.S. at 148–49, 99 S.Ct. at 433–34; *Skowronski,* 827 F.2d at 1418; *United States v. Obregon,* 748 F.2d 1371, 1374–75 (10th Cir.1984); *United States v. Erickson,* 732 F.2d 788, 790 (10th Cir.1984). Neither defendant nor Clevenger owned the car. At best, Clevenger's unclear testimony at the hearing [4] raises the inference that he obtained possession or control of the vehicle from defendant. But there was no evidence concerning where or from whom defendant obtained the vehicle or whether his apparent possession was lawful. The mere fact that defendant apparently transferred control of the vehicle to Clevenger is not sufficient to establish defendant's legitimate possession of the car or that he had a reasonable expectation of privacy in the area searched.

Finally, defendant stresses that he produced the rear door key for Smith, the investigating officer. Defendant's assertion, even if true, does not alter the fact that he failed to establish legitimate possession of the car. *See, e.g., United States v. Sanchez,* 635 F.2d 47, 64 (2d Cir.1980) (mere possession of keys did not confer privacy interest where neither ownership of car nor permission from owner shown). At the most, possession of the key indicates that defendant carried the key to the rear door. In the absence of other evidence, possession of a key does not establish a passenger's legitimate expectation of privacy in a vehicle. We hold that defendant failed to establish a legitimate expectation of privacy in the automobile, and

**3.** There is no possibility of self-incrimination from admitting ownership of seized goods or otherwise testifying to establish an expectation of privacy in support of a motion to suppress since such testimony may not be admitted as evidence of guilt at trial. *See Salvucci,* 448 U.S. at 89–90, 100 S.Ct. at 2551–52; *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968).

**4.** On direct examination, Clevenger was asked whether he had permission to use the station wagon, to which he replied in the affirmative. II R. 62. On cross-examination by the government, Clevenger testified as follows:

"Q. Did you tell Officer Smith that, after he asked you who owned the car, [sic] told him that it was somebody by the name of Parmet, P–A–R–M–E–T?
A. No, I didn't say that.
Q. Who did own the car?
A. I don't know who owns the car.
Q. How did you get the key to the car?
A. It was loaned to us.
Q. By whom?
A. By Mr. Erwin [defendant].
Q. You got the key from whom?
A. From my friend Jim Erwin.

Q. And when did you get the car?
A. I don't know that either, the exact time.
Q. What day?
A. That, I can't answer either.
Q. Was it on January 11?
A. I don't know.
Q. Where did you get the car?
A. I don't know. I didn't receive it. I don't have that information.
Q. Where was it you first got in the car, Mr. Clevenger?
A. In Phoenix.
*Id.* at 66–67. Officer Smith testified on direct examination that he had asked Clevenger who owned the car and Clevenger replied that it was owned by a friend with a name that sounded like "Parmet." *Id.* at 10. According to the uncontradicted testimony of a DEA agent, the vehicle was registered to Leonard Parmet of Phoenix. *Id.* at 57. Before the incident in question, the car was sold to Donald Turley of Glendale, Arizona. When asked if Turley had mentioned anything about the vehicle being used by or loaned to defendant or Clevenger, the agent responded, "Not to my knowledge." *Id.* at 59.

thus his Fourth Amendment rights could not have been violated by the search.

## II

■ Having determined that defendant has sufficient Fourth Amendment interests to challenge the stop, but not the subsequent search, we now must consider whether the stop was lawful. If it was unlawful, the "fruit of the poisonous tree" doctrine might dictate exclusion of the evidence discovered during the search. *See ante* n. 2. Defendant challenges the constitutionality of the stop for speeding on the ground that it merely was a pretext to conduct an illegal search for drugs.[5] The district court found that "the stop was not a pretext ... it was a legitimate stop at 67 miles an hour." II R. 79. The court, however, was without the benefit of our opinion in *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988). In *Guzman* we held that a stop for the violation of a traffic regulation may still violate the Fourth Amendment if, under identical circumstances, a reasonable officer would not have made the stop but for the existence of an impermissible purpose. *Id.* at 1517. We are unable to determine whether the district court in the instant case applied the objective reasonableness standard of *Guzman* to find no pretext, or whether it applied a subjective standard based on Smith's testimony. Regardless of which standard it applied, we believe that "overwhelming objective evidence" exists in this case to conclude that the stop was reasonable.[6] *See Smith v. United States*, 799 F.2d 704, 710 (11th Cir. 1986). In our view, under the circumstances presented here, a reasonable New Mexico patrol officer routinely would have stopped a vehicle traveling twelve miles over the speed limit even in the absence of the alleged illicit motive, and nothing in the record is to the contrary.[7] *See Guzman*, 864 F.2d at 1517, 1518; *cf. Smith*, 799 F.2d at 710–11. Because the stop was legal and not pretextual, and because defendant has no Fourth Amendment rights implicated by the subsequent search, we have no occasion to address whether the consent to the search was voluntary.

AFFIRMED.

---

5. Defendant alleges that Smith stopped the car only because the circumstances were consistent with a so-called "drug courier profile." If this were true, and a reasonable officer would not have otherwise stopped the car, the stop would not necessarily be illegal. Rather, we would examine whether Smith had a reasonable suspicion, based on specific and articulable facts, that drugs were being transported in that particular vehicle. *See United States v. Sokolow*, —— U.S. ——, ——, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1 (1989) ("A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion, but the fact that these factors may be set forth in a 'profile' does not somehow detract from their evidentiary significance as seen by a trained agent.").

6. We believe that the suppression hearing "resulted in a record of amply sufficient detail and depth from which the determination of [objective reasonableness] may be made." *Brown v. Illinois*, 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975). Now that *Guzman* has been decided, hereafter we expect the parties to produce at a suppression hearing the sort of objective evidence suggested in that opinion. *See* 864 F.2d at 1518.

7. Defendant argues that pretext was demonstrated primarily by the alleged existence of a drug training program by the New Mexico State Police entitled "Operation Pipeline," Officer Smith's log showing that a majority of Smith's traffic citations were issued to out-of-state vehicles, Smith's testimony that he did not stop every vehicle he observed speeding, and the fact that Smith did not issue the speeding citation until he had already arrested the defendants and transported them to the station.

As to the last of these contentions, it would be ludicrous to demand that Smith write the ticket on the side of the highway when he had two people under arrest for felony drug charges. The remaining contentions do not impress us. Officer Smith testified that he was traveling in the opposite direction of the vehicle occupied by Clevenger and defendant when he caught it on radar, and that he really could not make out the vehicle, its occupants, or the fact that it was from out-of-state until he had turned around and come up behind the car to pull it over. Smith also testified that he simply had stopped the car for speeding, and was not suspicious of anything else until he began speaking to Clevenger.