42 F.3d 1389
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth Wayne FOWLER, Defendant-Appellant.
 No. 93-6483.
 United States Court of Appeals, Sixth Circuit.
 Dec. 7, 1994.
 
 Before: MILBURN, BOGGS, and NORRIS, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 Defendant Kenneth Wayne Fowler appeals his jury convictions and sentence by the district court for one count of conspiracy in violation of 21 U.S.C. Sec. 846, and 21 counts of possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1). On appeal, the issues are (1) whether the district court properly denied defendant's motion to suppress evidence seized pursuant to a vehicle stop on October 14, 1991, that allegedly violated the Fourth Amendment; and (2) whether the district court erred in concluding that it did not have the authority to allow defendant a downward departure from the sentencing guidelines by virtue of his religious conversion. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On October 14, 1991, Officer Carl Mazzola and Officer Duane Baushke were operating a fixed radar site from their police car on U.S. Highway 59 North, just north of Carthage, Panola County, Texas. Both officers were employed by the City of Carthage Police Department. At approximately 12:25 p.m., Officer Mazzola stopped a grey vehicle for speeding after having clocked the vehicle at 63 miles per hour in a 55 mile per hour speed zone. Officer Mazzola noticed that a white Toyota pickup truck was following closely behind the grey vehicle and observed that both vehicles had Tennessee license plates. After being stopped, the driver of the grey vehicle quickly approached Officer Mazzola before he could get out of his police car. The driver appeared very nervous and agitated. Officer Mazzola asked the driver of the grey vehicle if he was traveling with the other vehicle, referring to the pickup truck. The driver answered "yes" and identified one of the occupants of the pickup truck as Kenny Fowler, the defendant. After obtaining written consent to search the grey vehicle, Officer Mazzola found a set of Accu scales, capable of weighing from two ounces to 50 pounds, of a type which he had previously seen used to weigh marijuana. He also found an ammo can containing a large plastic baggie which had a strong odor of marijuana and which contained marijuana flakes. The driver of the grey vehicle was arrested.
 
 
 3
 Based upon these facts, and relying on his 15 or 16 years of experience as a police officer, Officer Mazzola concluded that since the two vehicles were traveling together, the pickup truck might be transporting contraband. He radioed ahead and asked that the pickup truck be stopped, but there is conflicting testimony as to whether the suspicion that the pickup truck might be transporting drugs was given in the broadcast as a reason to stop the pickup truck. The pickup truck was stopped and searched by officers of the Texas Highway Patrol. Although the Texas Highway Patrol found nothing in their search of pickup truck, Officer Mazzola then asked that the pickup truck and its occupants be escorted back to the Carthage police department. The pickup truck was operated by O.V. Fowler, Jr., and defendant was a passenger in the pickup truck.
 
 
 4
 Officer Mazzola explained to the occupants of the pickup truck why they were stopped and asked O.V., the driver, for consent to search the vehicle. O.V. looked over at defendant, who nodded his head, and then O.V. signed the consent form. During a search of the passenger compartment, Officer Mazzola found a power screwdriver in the glove box. In walking around the pickup truck, he noticed that the panel screws were loose and began tapping the panels around the pickup truck. When he tapped the tail gate, it sounded solid and the panel screws appeared loose. Officer Mazzola used the power screwdriver to remove the panel and found approximately $90,000 hidden in the tail gate of the pickup truck. When Officer Mazzola radioed in to the dispatcher, he stated that he had found approximately $75,000, at which time defendant hollered, "It's not $75,000, it $90,000; I'm going down to Houston to buy a truck." However, the pickup truck, which was not registered to either defendant or O.V. Fowler, Jr., was being driven away from Houston when it was stopped.
 
 
 5
 The stopping of the pickup truck began an investigation which resulted in the obtaining of an overwhelming amount of evidence of various drug transactions involving defendant. Because defendant does not question the sufficiency of the evidence, the details of the drug transactions are not relevant to this appeal and are not discussed here.
 
 B.
 
 6
 On December 14, 1992, the Federal Grand Jury for the Western District of Tennessee issued a 25-count indictment, naming defendant Kenneth Wayne Fowler in 23 of the counts. Count one of the indictment charged defendant with conspiracy in violation of 21 U.S.C. Sec. 846. Counts two through 22 inclusive charged defendant with possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1). Count 23 charged defendant with possession with intent to distribute marijuana in violation of 21 U.S.C. Sec. 841(a)(1). Defendant was arraigned and entered pleas of not guilty on January 6, 1993.
 
 
 7
 On February 3, 1993, defendant filed a motion to suppress all evidence obtained during, and derived from, the initial stop on October 14, 1991, of the pickup truck, operated by O.V. Fowler, Jr., in which defendant was a passenger. On March 11, 1993, at the hearing on O.V. Fowler, Jr.'s motion to suppress, defendant withdrew his motion to suppress because of defendant's concern that he did not have standing to challenge the search.
 
 
 8
 On March 23, 1993, defendant filed a motion requesting that his motion to suppress be reinstated and ruled upon without additional testimony being taken. Thereafter, on April 27, 1993, the district court entered an order reinstating defendant's motion to suppress and denying both O.V.'s and defendant's motion to suppress. The district court specifically found that defendant "did not have a Fourth Amendment interest sufficient to challenge the search" of the pickup truck. J.A. 101. It further found that even if defendant did have a legitimate expectation of privacy, the stop and subsequent search did not violate the Fourth Amendment. Therefore, the motion to suppress was denied.
 
 
 9
 A jury trial on the charges against defendant commenced on July 26, 1993. At the trial, the district court ruled that defendant did have standing to object to the search.[1] It further held that there was reasonable suspicion to make an investigatory stop and probable cause to make an arrest. J.A. 261. Accordingly, the motion to suppress was again denied. On July 30, 1993, the jury returned a verdict of guilty as to defendant on counts one through 22. The district court had previously granted a motion for judgment of acquittal as to defendant on count 23.
 
 
 10
 A sentencing hearing was held on November 5, 1993, and defendant was sentenced to 200 months in prison. In determining the defendant's sentence, the district court concluded that it did not have the authority to make a downward departure from the sentencing guidelines for defendant's sincere religious conversion. This timely appeal followed.
 
 II.
 A.
 
 11
 Defendant argues that the district court erred in denying his motion to suppress the evidence seized on October 14, 1991, as well as all evidence derived from that evidence. Specifically, defendant argues that the stopping and detention of the pickup truck in which he was a passenger, as well as the search resulting therefrom, violated the Fourth Amendment to the Constitution of the United States because they were not supported by probable cause. Because the denial of the motion to suppress presents several subissues, we consider each individually.
 
 
 12
 When reviewing a district court's denial of a motion to suppress evidence, this court must consider the evidence in the light most favorable to the government. United States v. Garza, 10 F.3d 1241, 1245 (6th Cir.1993) (citing National Eng'g & Contracting Co. v. OSHA, 928 F.2d 762, 765 (6th Cir.1991)). A district court's denial of a motion to suppress will be affirmed on appeal if there exists any proper reason for the denial, even one not relied on by the district court. Id. (quoting United States v. Barrett, 890 F.2d 855, 860 (6th Cir.1989)). Furthermore, this court " 'must accept the findings of fact upon which the district court relied in dealing with suppression of evidence unless those findings are clearly erroneous.' " Id. (quoting United States v. French, 974 F.2d 687, 691 (6th Cir.1992), cert. denied, 113 S.Ct. 1012 (1993)). However, this court must review de novo the district court's determinations that are conclusions of law. Id. ; see also United States v. Briggman, 931 F.2d 705, 708 (11th Cir.), (per curiam), cert. denied, 112 S.Ct. 370 (1991).
 
 
 13
 Defendant argues that under United States v. Erwin, 875 F.2d 268, 270 (10th Cir.1989), passengers in vehicles have the same standing as the driver to challenge the search of a vehicle. However, Erwin does not stand for such a broad proposition. The Erwin court was careful to draw a distinction between the passenger's standing to challenge a stop and the passenger's standing to challenge a search. Id. at 269. We likewise shall separately consider defendant's standing to challenge the stop and defendant's standing to challenge the search.
 
 
 14
 (1)
 
 
 15
 We first will address the issue of whether defendant had standing to challenge the stop of the vehicle. In Erwin, the defendant was a passenger in a vehicle that was stopped for speeding. Id. at 269. During the stop, the officer obtained the driver's consent to look in the back of the vehicle, where he found 12 plastic wrapped packages of marijuana. The defendant was arrested and moved to suppress the marijuana seized from the vehicle. On appeal, the Tenth Circuit held that the defendant had standing to challenge the stop of the vehicle because "the 'Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of arrest.' " Id. at 270 (citing United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)). The court noted that "[d]rivers and passengers have similar interests in seeing that their persons remain free from unreasonable seizure." Id. (emphasis added).
 
 
 16
 In this case, defendant was a passenger in the pickup truck that was stopped and taken to the Carthage Police Department. Because defendant's person was seized, he clearly has standing to challenge the validity of the stop under Erwin.
 
 
 17
 (2)
 
 
 18
 We next shall consider defendant's standing to challenge the search of the pickup truck. In ruling on defendant's reinstated pretrial motion to suppress, the district court found that defendant "did not have a Fourth Amendment interest sufficient to challenge the search." J.A. 101. Under Rakas v. Illinois, 439 U.S. 128, 143 (1978) (citing Katz v. United States, 389 U.S. 347, 353 (1967)), the district court properly focused on whether defendant "had a legitimate expectation of privacy in the area which was subject to the search and seizure." J.A. 100. Relying on Rakas, 439 U.S. at 148-49, the district court rejected defendant's argument that he had an expectation of privacy because he was a passenger in the pickup truck, which was not registered to him. The district court also relied on Erwin, 875 F.2d at 270-71, in rejecting defendant's argument that he had standing as a result of Officer Mazzola's testimony at the suppression hearing that the $90,000 belonged to defendant. The district court reasoned as follows:
 
 
 19
 In this case, Kenny Fowler was not the driver of the vehicle, and there is no evidence that he had either ownership, possession or control of the pickup. In addition, the money was concealed in the tailgate of the pickup, rather than in a readily accessible part of the vehicle. Under these circumstances, the court finds that Kenny Fowler did not have a Fourth Amendment interest sufficient to challenge the search.
 
 
 20
 J.A. 101.
 
 
 21
 At trial, however, the district court stated, "I ruled at the suppression hearing that defendant Kenneth Wayne Fowler had standing to object to the search, and that is my ruling today. I am again ruling that he had and has standing to object to the search." J.A. 261. The district court made this ruling without articulating any grounds for its decision, save its erroneous recollection that it had previously ruled that defendant did have standing. It appears that the district court summarily made this ruling at trial with the intent that it be consistent with its well-reasoned ruling on defendant's reinstated pretrial motion to suppress. Thus, it is clear that the district court committed error in making the ruling at trial, which it erroneously believed comported with its pretrial ruling. Even if we assume, however, that the district court did not err as to the basis of its ruling, we find that defendant did not have standing to object to the search.
 
 
 22
 A defendant has standing to challenge the validity of a search under the Fourth Amendment only if he had a legitimate expectation of privacy in the area that was subject to the search. Rakas, 439 U.S. at 143 (citing Katz, 389 U.S. at 353). In United States v. Pino, 855 F.2d 357, 360 (6th Cir.1988), this court held that the defendant Llera did not have standing to challenge a search because he did not meet his burden of proving that he had a legitimate expectation of privacy in the vehicle searched. The court held that Llera did not have standing because the vehicle was a rental car and Llera was not listed as an authorized driver. Id. In fact, Llera did not even have a driver's license.
 
 
 23
 This case is similar to Pino. Defendant was not the driver of the pickup truck and he presented no evidence of any property or possessory interest in it. In addition, the pickup truck was not registered to defendant or the driver O.V. Fowler, Jr. Thus, based on the evidence presented, it seems clear that defendant did not have standing to challenge the search of the pickup truck. Accordingly, for both of the reasons stated, the district court committed clear error in ruling that defendant had standing to challenge the search.
 
 B.
 
 24
 Defendant argues that his seizure was an improper violation of the Fourth Amendment because his detention was so intrusive that it rose to the level of a full custodial arrest that was not supported by probable cause. Specifically, defendant claims that the stop was an arrest because of the radio broadcast to stop the pickup truck and bring back its occupants to the police department.
 
 
 25
 Where the police procedures used in the investigative process become "so intrusive with respect to a suspect's freedom of movement and privacy interests," the full protections of the Fourth Amendment are triggered. Hayes v. Florida, 470 U.S. 811, 815-16 (1985). For example, when a person is forcibly removed from a place he is entitled to be and transported to the police station, where he is detained for investigative purposes, the seizure becomes sufficiently like an arrest that it must be supported by probable cause to be valid. Id. at 816. It does not matter that the seizure is not considered an "arrest" under state law. Dunaway v. New York, 442 U.S. 200, 212 (1979).
 
 
 26
 Defendant relies on Dunaway to support his argument that the seizure was a full arrest. In Dunaway, the defendant was suspected of a homicide committed during the course of an attempted robbery. Id. at 202. Relying on information that was not sufficient to obtain a warrant, the police ordered that the defendant be picked up and brought in for questioning. The defendant was taken into custody and transported to the police department in a police car. The defendant "was not told he was under arrest, [but] he would have been physically restrained if he had attempted to leave." Id. at 212. The Supreme Court held the seizure was much more intrusive than the brief and narrow detentions authorized by Terry and its progeny. Id. at 212-13. The Court reasoned, "Indeed, any 'exception' that could cover a seizure as intrusive as that in this case would threaten to swallow the general rule that Fourth Amendment seizures are 'reasonable' only if based on probable cause." Id. at 213.
 
 
 27
 In this case, defendant was similarly never told that he was free to leave. In addition, although there is no evidence in the record that defendant felt that he was not free to leave or that he knew that he would have been apprehended if he had attempted to leave, Officer Mazzola testified that if defendant had attempted to leave he would have been apprehended, even though he was not under "arrest." J.A. 124-25. The only notable distinction is that in Dunaway, the defendant was actually taken into custody and transported to the police department in a police car. Id. at 202. In this case, defendant was not taken into custody; defendant and O.V. were merely escorted in the pickup truck to the Police Department, with O.V. driving the pickup truck, after the initial search of the pickup truck by the Texas Highway Patrol turned up nothing. However, this is a distinction without a difference. See Florida v. Royer, 460 U.S. 491, 502-03 (1983) (plurality) (concluding that the defendant was arrested when he was requested to accompany officers to an airport police room because the officers retained the defendant's airline ticket and identification and seized his luggage); United States v. Gonzalez, 763 F.2d 1127, 1132-33 (10th Cir.1985) (holding that there was an arrest where an officer, who had the defendant's driver's license, car registration, and title, asked the defendant to accompany him to the police station). Accordingly, we find, as the court in Dunaway did, that the stop was so intrusive that it rose to the level of an arrest that must be supported by probable cause to be reasonable under the Fourth Amendment.
 
 
 28
 The probable cause standard requires an inquiry into whether the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person is believing that the defendant had committed or was committing a crime. Beck v. Ohio, 379 U.S. 89, 91 (1964). There is no doubt that facts and circumstances surrounding defendant's arrest did not give Officer Mazzola probable cause to make an arrest. Accordingly, the arrest violated defendant's Fourth Amendment rights.
 
 C.
 
 29
 Defendant next argues that the officers exceeded the scope of the consent to search the pickup truck by dismantling the tail gate of the pickup truck with a power screwdriver found in the pickup truck's glove compartment. Defendant does not have standing to challenge to search itself, but we discuss the scope of the consent nonetheless because it has bearing on the fruit of the poisonous tree argument addressed below.
 
 
 30
 The clear error standard applies to the review of the trial court's findings that the scope of a search has not been exceeded. United States v. Huffhines, 967 F.2d 314, 319 (9th Cir.1992). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). Although a suspect may limit the area subject to a consensual search, a general consent to search a vehicle includes any compartment or containers within the vehicle. Id. A suspect may delimit the scope of consent as he chooses. Id. In addition, several circuits have held that the suspect's failure to object to the continuation of a search of a particular area may be considered an indication that the search was included within the scope of the consent. United States v. Torres, No. 93-2854, 1994 WL 382219 at * 5 (7th Cir. July 22, 1994) (concluding that consent to search a vehicle included using a screwdriver to open a wooden container in the vehicle); United States v. Martel-Martines, 988 F.2d 855, 858 (8th Cir.1993) (holding that the defendant's consent to search his truck for drugs included puncturing the sheet metal that covered a secret compartment in the truck); United States v. Espinosa, 782 F.2d 888, 892 (10th Cir.1986) (finding that removing a vehicle's back seat to search behind the rear quarter panel was within the scope of consent to "look through" the vehicle). Cf. United States v. Strickland, 902 F.2d 937, 941-42 (11th Cir.1990) (stating that a general consent to search a vehicle does not include consent to intentionally inflict damage by slashing the spare tire to inspect its contents).
 
 
 31
 In this case, O.V. Fowler, Jr. signed a written consent to search the pickup truck. Before signing the consent form, Officer Mazzola explained to O.V. and defendant why the pickup truck was stopped and asked O.V. for a consent to search the vehicle for marijuana. O.V. looked over at defendant, who nodded his head, and then O.V. signed the consent form. Defendant should have reasonably expected that a search for marijuana would extend to any part of the pickup truck where marijuana might be concealed, including the panels of the truck's body. Neither O.V. nor the defendant objected when Officer Mazzola removed the panel screws from the tailgate with the power screwdriver that was found in the glove box. They both failed to withdraw or delimit the consent previously given. Thus, we hold that the search of the tailgate of the pickup truck did not exceed the scope of the consent given by defendant.
 
 
 32
 Although defendant does not argue that the consent was involuntary, we conclude that the consent was freely and voluntary given, and was not the result of coercion, duress, or submission to a claim of authority, as evidenced by the fact that O.V. Fowler, Jr. looked to defendant for approval before giving consent to search the pickup truck. See Bumper v. North Carolina, 391 U.S. 543, 548 (1968).
 
 D.
 
 33
 Defendant's last argument with respect to the district court's denial of the motion to suppress is that all evidence obtained as a result of the allegedly illegal search and seizure must be excluded as "fruits of the poisonous tree." See Taylor v. Alabama, 457 U.S. 687 (1982). Where a defendant who does not have standing to challenge a search has been illegally arrested, "the 'fruit of the poisonous tree' doctrine might dictate exclusion of the evidence discovered during the search." United States v. Erwin, 875 F.2d 268, 272 (10th Cir.1989) (emphasis added). However, the taint of an illegal arrest can be purged when the consent is the product of an intervening act of free will. United States v. Grant, 920 F.2d 376, 388 (6th Cir.1990).
 
 
 34
 In this case, defendant was merely escorted to the police department, and he was never told he was not free to leave. The fact that O.V. Fowler, Jr. looked to defendant for approval before giving consent to search the pickup truck indicates that the taint, which was minor at worst, had been purged. As already stated, the consent was freely and voluntary given, and was not the result of coercion, duress, or submission to a claim of authority. Thus, even though defendant was arrested in violation the Fourth Amendment, the evidence obtained during the search of the pickup truck need not be excluded as the tainted product of the illegal arrest. See Brown v. Illinois, 422 U.S. 590, 601-02 (1975). For the same reasons, any evidence obtained subsequent thereto need not be excluded.
 
 E.
 
 35
 Finally, defendant argues that the district court erred in concluding that it did not have the authority to make a downward departure from the United States Sentencing Guidelines ("U.S.S.G.") for defendant's sincere religious conversion.[2] The parties agree that the standard of review is clearly erroneous. United States v. Paulino, 935 F.2d 739, 756 (6th Cir.), cert. denied, 112 S.Ct. 315 (1991).
 
 
 36
 Section 5H1.10 of the U.S.S.G. provides that race, sex, national origin, creed, religion, and socio-economic status are not relevant factors in the determination of a sentence. In United States v. Burch, 873 F.2d 765, 769 (5th Cir.1989), the Fifth Circuit held that it was improper for the district court to consider the defendant's sophistication as a factor in departing from the guidelines because sophistication was related to socio-economic status, which is never relevant to sentencing under U.S.S.G. Sec. 5H1.10. Id. It reasoned that "sentencing is to be based on the crime committed, not the offender." Id. at 768-69. Religion, like socio-economic status, is specifically enumerated in U.S.S.G. Sec. 5H1.10 as a factor that is not relevant in the determination of a sentence. S ee id. at 769.
 
 
 37
 Defendant relies on United States v. Maier, 975 F.2d 944 (2d Cir.1992), and United States v. Maddalena, 893 F.2d 815 (6th Cir.1989), to support his position that the district court had the authority to depart downward based solely on defendant's religious conversion. Those cases, however, are inapplicable to this case. In Maier, the court concluded that the defendant's rehabilitative efforts to end drug addiction were permissible grounds for a downward departure. Maier, 975 F.2d at 948. In Maddalena, this court instructed the district court that it may consider the defendant's efforts to stay away from drugs as a basis for downward departure. Maddalena, 893 F.2d at 818. Maier and Maddalena are distinguishable because they involve a factor in the defendant's acceptance of responsibility, which is a permissible ground for adjustment under U.S.S.G. Sec. 4B1.1. Accordingly, as defendant's religion is not relevant in the determination of his sentence because of the explicit bar under U.S.S.G. Sec. 5H1.10, it was not error for the district court to conclude that it did not have the authority to depart downward based on defendant's religious conversion.[3]
 
 III.
 
 38
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 At the suppression hearing, the district court correctly stated the test of standing as whether defendant had a legitimate expectation of privacy in the area subject to the search. Thus, in concluding that defendant did not have a sufficient interest to challenge the search, the district court was necessarily ruling that defendant did not have standing to contest the search. At trial, the district court ruled that defendant did have standing to challenge the search. It stated that it "ruled at the suppression hearing that defendant Kenneth Wayne Fowler had standing to object to the search, and that is my ruling today." J.A. 260-61. The district court was either erroneously stating that it had previously ruled at defendant's suppression hearing that defendant had standing or it was reversing its prior ruling by concluding that defendant had standing
 
 
 [2]
 Defendant does not attack the district court's failure to exercise its discretion to depart downward. Such a claim would not be subject to appellate review. United States v. Dellinger, 986 F.2d 1042 (6th Cir.1993); 18 U.S.C. Sec. 3742(a)(2)
 
 
 [3]
 We recognize the difference between religion and a religious conversion, with the latter connoting a change in one's religious beliefs and daily living between the time of the crime and sentencing. However, we do not feel that such a fine distinction was intended to be drawn by the drafters of the United States Sentencing Guidelines