**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0802n.06

Nos. 10-5146, 10-5147

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Nov 30, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff-Appellee, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| v. | ) | |
| | ) | |
| BASILIO JIMENEZ and JOHNNY ESPINAL- | ) | |
| BISONO, | ) | **OPINION** |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

Before: BOGGS and STRANCH, Circuit Judges; and THAPAR, District Judge.[*]

**AMUL R. THAPAR**, District Judge.

Defendants Basilio Jimenez and Johnny Espinal-Bisono appeal their convictions for conspiracy to possess with intent to distribute five kilograms or more of cocaine. They argue that the district court erred in denying their motions to suppress six kilograms of cocaine found in their car during a traffic stop. We affirm.

---

[*] The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

# I.

Many of us observe tailgating every day, and Officer Lockhart is no exception. But the tailgating he saw on August 27, 2008, led to more than just annoyance. While traveling eastbound on I-24 in Chattanooga, Tennessee, he saw the Defendants' Chrysler Pacifica following "no more than twenty-four inches" behind a FedEx tractor-trailer truck. The Pacifica was travelling approximately fifty-five miles per hour. As Officer Lockhart drove closer in the fast lane, the Pacifica abruptly slowed down in the middle lane, impeding traffic. Officer Lockhart then also slowed abruptly and moved from the fast lane to the middle lane. The Pacifica immediately changed to the fast lane and continued at the same slow speed. Eventually, the Pacifica passed Officer Lockhart and pulled in front of him in the middle lane. Because the Defendants followed too closely behind the FedEx truck in violation of Tennessee law, Officer Lockhart pulled the car over.

Officer Lockhart approached the Pacifica and asked the driver, Basilio Jimenez, for his license and proof of insurance. Jimenez readily complied. When asked about his suspicious driving, Jimenez explained that he was watching his GPS. After running a license, tag, and registration check, Officer Lockhart directed Jimenez to step to the front of his patrol car so that he could write a warning citation. Jimenez did so. While writing the citation, Jimenez answered Officer Lockhart's questions and even joked about Officer Lockhart's youthful appearance.

About twelve and one-half minutes into the traffic stop, while he was still finishing the citation, Officer Lockhart asked Jimenez about his travel plans. Jimenez stated that he was traveling from Atlanta to Connecticut. Because Jimenez's answer was inconsistent with his direction of travel on I-24 eastbound, Officer Lockhart sought clarification. Jimenez's explanations continued to make

no sense. So Officer Lockhart tried to verify their plans with the passenger, Johnny Espinal-Bisono, but he did not speak English. Sergeant Lewis then arrived, and the two officers discussed the Defendants' suspicious travel plans. At this point, the traffic stop had lasted fifteen minutes.

After speaking with Sergeant Lewis, Officer Lockhart asked Jimenez if he had any illegal drugs in the car. Jimenez responded, "no, you can check." Mag. R&R, R. 47 at 5. To make sure, Officer Lockhart asked, "Do you mind if I search the car?" Jimenez again stated, "no, you can check." *Id.* Officer Lockhart then stated that he was "going to take just a quick look." *Id.* at 6. While Lockhart and Lewis began their search, a Tennessee State Trooper arrived and stood with the Defendants.

About twenty-one minutes into the traffic stop, Officer Lockhart noticed suspiciously "tooled" bolts in an area of the car where a consumer would "not be expected to remove bolts." Suspecting a hidden compartment, he asked Jimenez whether any recent work had been done on the car. Jimenez said no. Officer Lockhart then removed the bolts, lifted the carpet, and noticed fresh paint, which further aroused his suspicions. Unsurprisingly, Officer Lockhart then found a compartment, which contained six kilograms of cocaine. The officers took both Defendants into custody.

Subsequently, the United States named both Defendants in a two-count indictment charging (1) conspiracy to possess with the intent to distribute cocaine and (2) a substantive count of possession with the intent to distribute cocaine. In November 2008, the Defendants filed motions to suppress the cocaine. The magistrate judge recommended denying the motion, and the district court adopted the magistrate judge's recommendation. As a result, both Defendants pled guilty to

the conspiracy count, but reserved their rights to appeal the denial of their motions to suppress. They now appeal.

**II.**

The Defendants argue that the officers did not have probable cause to make the traffic stop.[1] In support of this argument, the Defendants claim that there is no "credible evidence" that the traffic violation actually occurred. Appellants' Br. at 21–22. On appeal, we review a district court's factual findings for clear error. *United States v. Oliver*, 397 F.3d 369, 374 (6th Cir. 2005). Credibility determinations are entitled to "even greater deference" than other factual findings. *Id.* (quoted case omitted).

The district court specifically found Officer Lockhart credible based on his demeanor and the consistency of his testimony with other evidence. The Defendants offer three reasons to overturn that credibility determination. First, the Defendants state that there was no FedEx truck in the video even though the patrol car's camera started recording thirty seconds before Officer Lockhart turned on his blue lights. But Officer Lockhart testified that he observed the Defendants "for some time" after the violation before pulling them over. Mag. R&R, R. 47 at 13 ("Defendants note that the videotape did not show the violation, but Officer Lockhart testified he observed the Pacifica for some time before activating his blue lights which in turn activated his dash camera."). His

---

[1] In their briefs, the Defendants make an additional argument: that following too closely cannot establish probable cause for a traffic violation. At oral argument, however, the Defendants conceded that it could form the basis for probable cause and did so here if Officer Lockhart was credible. Thus, we only address the credibility argument herein. Even on the merits, however, the argument that following too closely under Tennessee law does not establish probable cause is incorrect as a matter of law in this circuit. *See United States v. Sanford*, 476 F.3d 391, 395–96 (6th Cir. 2007) (holding that there was probable cause under Tenn. Code. Ann. § 55-8-124 where the distance between the cars was "approximately ten feet" for "only a moment" at "interstate speeds"); *United States v. Valdez*, 147 F. App'x 591, 595 (6th Cir. 2005) (holding that there was probable cause for the same violation where the distance between the cars was "twenty to thirty feet" for "fifteen seconds" at "about 60 miles per hour").

testimony is consistent with the video, which shows two tractor-trailer trucks in the distance. Second, the Defendants note that Officer Lockhart deliberately turned his microphone off during portions of the search. Officer Lockhart testified, however, that he turned off his microphone while talking to other law enforcement officers on the scene, Supp. Hr'g Tr. at 47–48, 84–85, and the district court saw no reason to disbelieve him. In any event, the Defendants offer no reason why turning off his microphone while discussing the situation with his fellow officers, standing alone, is enough to displace the district court's credibility determination. Third, the Defendants point to Officer Lockhart's decision to drive past the Pacifica before pulling it over. As Officer Lockhart testified, though, when he "got about even" with the Defendants, they slowed down "extremely fast," causing Officer Lockhart to continue past them in the fast lane. *Id.* at 50. The video is consistent with each of these factual findings, so we must defer to the district court's credibility determinations and factual findings. *See Sanford*, 476 F.3d at 396 (upholding factual findings where they are based on a "permissible" view of the evidence) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)). Therefore, Officer Lockhart had probable cause to initiate a traffic stop of Defendants' car.

Next, Defendants argue that Officer Lockhart unreasonably prolonged the traffic stop by asking them extraneous questions, making the later search of their car unconstitutional. An officer may ask a detained motorist questions unrelated to the traffic stop as long as those questions do not measurably extend the detention and the detainee's "responses are voluntary." *United States v. Everett*, 601 F.3d 484, 496 (6th Cir. 2010); *see also Arizona v. Johnson*, 555 U.S. 323, ___, 129 S. Ct. 781, 788 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic

stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). In making this inquiry, we look to the "totality of the circumstances" to determine whether the "stop as a whole"—not just the "interval of prolongation"—was reasonable. *Everett*, 601 F.3d at 494. Our "overarching consideration" is the officer's diligence in pursuing a "'means of investigation that was likely to confirm or dispel [his] suspicions quickly.'" *Id.* (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)).

In this case, the length of the traffic stop was constitutional. The entire stop lasted fifteen minutes before Jimenez consented to the search. Mag. R&R, R. 47 at 16. During the first twelve and one-half minutes, Officer Lockhart was "running a check" on Jimenez and the car and "writing the warning citation" while asking Jimenez about his travel itinerary. *Id.* Twelve and one-half minutes is clearly reasonable. *See United States v. Hill*, 195 F.3d 258, 269–70 (6th Cir. 1999) (upholding a twelve-minute detention during which the officer ran a license check and asked questions about the defendant's travel plans). Because Jimenez's explanation of his travel plans "simply didn't make sense," Mag. R&R, R. 47 at 19, Officer Lockhart used the last two and one-half minutes to try to verify these plans with Espinal-Bisono and "quickly" discuss his suspicions with Sergeant Lewis. *Id.* at 16. As we indicated in *Everett*, questions about travel plans will "rarely suggest a lack of diligence" by the officer because such questions "may help explain, or put into context, why the motorist was committing the suspicious behavior the officer observed." 601 F.3d at 494 (internal quotations omitted). The Defendants do not point to any evidence undermining Officer Lockhart's diligence. *See* Mag. R&R, R. 47 at 16 (explaining in detail how, "[l]eading up

to the consent, Lockhart was conducting the normal, permissible activities of a traffic stop"). Therefore, Officer Lockhart did not unconstitutionally prolong the traffic stop.

Finally, Jimenez argues that his consent was not voluntary, was only limited consent to search, and was withdrawn during the search. The Fourth Amendment generally requires searches to be conducted with a warrant issued upon probable cause with only a "few specifically established and well-delineated exceptions," such as consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). An officer with consent to search "'needs neither a warrant nor probable cause to conduct a constitutional search.'" *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008) (quoting *United States v. Jenkins*, 92 F.3d 430, 436 (6th Cir. 1996)). But a search based on consent is constitutional only if the consent was voluntary. *Id.* (citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). Consent is voluntary when the totality of the circumstances indicate that it is "unequivocal, specific and intelligently given, uncontaminated by any duress or coercion," *United States v McCaleb*, 552 F.2d 717, 721 (6th Cir. 1977) (quoted case omitted), including "'more subtle forms of coercion that might flaw [an individual's] judgment.'" *Moon*, 513 F.3d at 537 (quoting *Bustamonte*, 412 U.S. at 227). Although we review the ultimate existence of consent de novo, we defer to the district court's factual inferences and credibility determinations unless there is clear error. *Moon*, 513 F.3d at 536 (citing *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006)).

Jimenez argues that his consent was not voluntary because he possesses a limited understanding of the English language. Appellants' Br. at 32. But the district court found that Jimenez "had no trouble understanding Lockhart," "responded easily to Lockhart's questions," and even "joked with Lockhart about looking 29 [years old]." Mag. R&R, R. 47 at 21; Mem. Op. &

Order, R. 53 at 9 (adopting the R&R). Furthermore, Jimenez offered to allow Officer Lockhart to search the car before Officer Lockhart ever requested consent. And when Officer Lockhart did ask, Jimenez repeated his willingness to consent. *Id.* The videotape of the traffic stop confirms these findings. And we have upheld consent in similar circumstances before. *See Valdez*, 147 F. App'x at 596 (upholding a consent search where defendant could "understand, and interact with" law enforcement, including complying with requests to produce his license and responding to questions about his travel plans in English); *see also United States v. Lopez-Medina*, 461 F.3d 724, 738 (6th Cir. 2006) (upholding consent where the defendant did not indicate any difficulty in understanding the officer in English and responding to his questions). Thus, Jimenez's consent was voluntary.

Undeterred, Jimenez argues that he gave only limited consent to search and that the officers overstepped those limits. Although there is no question that an officer's search cannot exceed the scope of a suspect's consent, *United States v. Gant*, 112 F.3d 239, 242 (6th Cir. 1997) (citing *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)), that did not happen here. While a suspect may limit, delimit, or withdraw his consent as he pleases, general consent to search is defined by "the expressed object of the search." *United States v. Garrido-Santana*, 360 F.3d 565, 576 (6th Cir. 2004) (citing *Jimeno*, 500 U.S. at 251). Because a district court's determination of whether a search exceeded the scope of consent is a factual question, we review that determination for clear error. *Id.* at 570.

Here, the search was firmly within the scope of Jimenez's consent. Before Jimenez consented, Officer Lockhart specifically asked him if he had any illegal drugs in the car. Mag. R&R, R. 47 at 22. By doing so, Officer Lockhart informed Jimenez that illegal drugs were the object of his search and thereby established the scope of his search as "extend[ing] to any part" of

the car where the drugs might reasonably be concealed. *Accord Jimeno*, 500 U.S. at 251 (holding that, after the officer stated his belief that narcotics were in the car, a suspect's general consent extended to all containers in the car that could reasonably contain the narcotics). Jimenez nonetheless claims that his consent was limited because Officer Lockhart subsequently stated that he was "going to take just a quick look." Mag. R&R, R. 47 at 6. But Officer Lockhart's gratuitous statement *after* Jimenez's two express grants of general consent does not, without more, transform his general consent into limited consent. *Accord United States v. Lopez-Mendoza*, 601 F.3d 861, 868–69 (8th Cir. 2010) (affirming a thirty-minute consensual search of a car involving the removal of two interior panels where the officer stated that he was going to "look real quick"). Therefore, Jimenez gave general consent to search, which Officer Lockhart reasonably believed to include a search for the hidden compartment. *Garrido-Santana*, 360 F.3d at 576 (upholding the search of a car's gas tank as within the scope of general consent when the officer testified that an easily accessible gas tank was a "well-known" hiding spot for narcotics and the search did not damage the car). *Accord United States v. Fowler*, 42 F.3d 1389, 1994 WL 685417, at *7 (6th Cir. 1994) (unpublished table decision) (upholding the removal and search of a truck's body panels for marijuana as within the scope of general consent).

Finally, Jimenez argues that he tried to withdraw his consent during the search by approaching Sergeant Lewis, but that Sergeant Lewis prevented him from withdrawing his consent by ordering him to stay near the patrol car. The district court, however, did not find Jimenez's testimony credible on this point because he had a "number of opportunities" to tell Sergeant Lewis that he wanted to stop the search. Mem. Op. & Order, R. 53 at 9. Indeed, Jimenez could have done

so at any time by telling Trooper Harvey, who was "standing next to the defendants during the entire search." Mag. R&R, R. 47 at 23. Instead, Jimenez never acted as if or stated unequivocally that he wanted to withdraw his consent. Mem. Op. & Order, R. 53 at 9. The district court was therefore correct to conclude that Jimenez did not withdraw his consent before the officers found the hidden compartment.

\* \* \* \* \*

For the reasons stated, we **AFFIRM** the judgment of the district court.