UNITED STATES of America,
Plaintiff–Appellee,

v.

Christopher Columbus LEWIS,
Defendant–Appellant.

No. 93–3061.

United States Court of Appeals,
Tenth Circuit.

May 5, 1994.

Charles D. Anderson, Federal Public Defender, and Marilyn M. Trubey, Branch Chief, Federal Public Defender's Office, Topeka, KS, for defendant-appellant.

Randall K. Rathbun, U.S. Atty., and Thomas G. Luedke, Asst. U.S. Atty., Topeka, KS, for plaintiff-appellee.

Before BALDOCK, Circuit Judge and McWILLIAMS, Senior Circuit Judge and SHADUR, Senior District Judge **

SHADUR, Senior District Judge.

Christopher Columbus Lewis ("Lewis") has appealed his conviction following a jury trial on five drug-related counts: possession with intent to·distribute cocaine, possession with intent to distribute crack cocaine, conspiracy to possess both of those substances with the intent to distribute them, and two counts charging the use of a firearm during drug trafficking.[1] Lewis' conviction led to concurrent long-term sentences on the drug charges, the longest being a custodial period of 240 months, with a consecutive mandatory term of 60 months to follow on the firearm counts. Lewis' objections on appeal are limited to his three claims that certain evidence should not have been admitted at trial (claims that he had advanced in two pretrial motions to suppress and in a motion in limine filed on the day of trial):

    1. evidence obtained from the search of the car driven by Davis, in which Lewis was a passenger at the time of their arrest,

    2. Lewis' statements made during an interview by a law enforcement officer on the day after his arrest and

    3. Lewis' additional statements to another law enforcement agent on the following day.

We find Lewis' claims to be without merit and therefore affirm his conviction.

### Facts

Because of the view that we take of Lewis' two suppression motions, it is unnecessary to recount the incidents leading to Davis' and Lewis' arrest, or the circumstances of the post-arrest interviews, in the same detail that Lewis' able federal defender counsel has set out in the brief on appeal. What follows suffices to present the framework for dealing with Lewis' legal arguments.

On July 20, 1992 Kansas Highway Patrol Trooper Michael Weigel ("Weigel") observed the rented car driven by Davis, with Lewis as passenger, traveling 73 miles per hour in a posted 65–mile–per–hour speed zone. Weigel stopped the car, and his ensuing conversa-

** The Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

1. Lewis' separately tried co-defendant Donald Kenard Davis ("Davis") has a separate appeal pending in our Docket No. 93–3091.

tions with Davis and Lewis—including some substantial inconsistencies in their stories—gave rise to suspicion on Weigel's part. When Weigel then asked to search the car, the trial court permissibly found (based on Weigel's testimony) that Davis consented to the search.

Weigel struck gold (or more accurately, the narcotics-related equivalent of gold) in that search: 300 grams of crack cocaine, a pager and a .22 caliber revolver in the trunk (earlier Weigel had found a fully-loaded .25 caliber semi-automatic pistol and a cellular telephone in the car's glove compartment), and a kilo of cocaine in the car's wheel well. Those items were the subject of defendants' joint motion to suppress, a motion that was denied by the district judge and that now serves as Lewis' first ground for appeal.

Needless to say, both Davis and Lewis were then arrested. Next day Weigel reminded Lewis of his *Miranda* rights and asked if Lewis wanted to discuss the situation. Lewis proceeded to provide Weigel with a tape-recorded statement. That statement is now the subject of Lewis' second ground for appeal—but only on the predicate that the statement flowed directly from the allegedly illegal search of the car.

On the next day (July 22) Bureau of Alcohol, Tobacco and Firearms Special Agent Mike Schmitz ("Schmitz") also interviewed Lewis. Before the interview began Schmitz again advised Lewis of his rights, and Lewis then signed the rights-acknowledgement portion of the form tendered to him by Schmitz. Because of what the district judge credited as an oversight on Schmitz' part, Schmitz did not ask Lewis to sign the waiver-of-rights portion of that same form. In any event, Lewis agreed to and did talk with Schmitz. Lewis' third ground for appeal asserts that his statements during that interview were involuntary and therefore excludable on constitutional grounds.

### Search of the Automobile

■ Lewis urges that as a passenger in the rented vehicle he had the required standing to argue the illegality of its search (citing for that proposition *United States v. Kye Soo Lee*, 898 F.2d 1034, 1037–38 (5th Cir.1990)).

In response the government points to our decisions in *United States v. Erwin*, 875 F.2d 268, 270–71 (10th Cir.1989), *United States v. Jefferson*, 925 F.2d 1242, 1249 (10th Cir.1991) and *United States v. Martinez*, 983 F.2d 968, 973–74 (10th Cir.1992).

■ Certainly the government has by far the better of that exchange—indeed, the seminal decision in *Rakas v. Illinois*, 439 U.S. 128, 148–49, 99 S.Ct. 421, 432–33, 58 L.Ed.2d 387 (1978) (which we relied on in our cases cited by the government) is directly on point. *Rakas* provides the definitive teaching that a "passenger *qua* passenger" has no reasonable expectation of privacy in a car that would permit the passenger's Fourth Amendment challenge to the search of the car. But even were Lewis viewed as having some attenuated possessory interest in the vehicle (a dubious assumption in light of the authorities), his contention does him no good in any event because Davis (as both lessee of the leased vehicle and in control as its driver) unquestionably had at least the primary possessory rights in the vehicle. That being so, the voluntary oral consent given by Davis to search both the trunk and its contents (as the trial judge found after hearing the evidence on the motion to suppress) unquestionably validated the search (a lesson taught by *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) and its nearly innumerable progeny). And that dooms Lewis' basic quarrel with the search itself.

■ Lewis' trial counsel also argued during the suppression hearing that even if Davis were held to have consented, Trooper Weigel's search exceeded the scope of that consent because it extended to Lewis' luggage contained in the trunk. But that argument too is a loser, because (1) Davis' consent was framed in general terms (extending to the entire trunk and its contents), (2) the searching officer had no way to determine ownership of the luggage from its external appearance and (3) nothing in the record reflects that Lewis interposed any contemporaneous objection to the search of his bag.

■ Before us Lewis seeks to pose an added argument that he was detained unlaw-

fully by Trooper Weigel. That objection to his own seizure would of course be personal to Lewis, unaffected by any question as to his standing to complain about the search of the car (*United States v. Arango,* 912 F.2d 441, 446 (10th Cir.1990), relying on *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578–79, 45 L.Ed.2d 607 (1975)). But Lewis' problem in that respect is that he never raised that issue of the seizure of his *person* before the trial court (there his objection, like Davis', was framed only in terms of the validity and scope of the search of the car). That waives the issue as a matter of law (Fed.R.Crim.P. 12(f)), with the possible exception of our review for any plain error resulting in manifest injustice (*United States v. Herndon,* 982 F.2d 1411, 1414–15 (10th Cir.1992))—something that assuredly is not present here.

Accordingly we hold that the district judge was right in denying Lewis' motion to suppress the evidence obtained through the search of the car. Lewis' first effort to upset his conviction thus fails.

### Lewis' July 21, 1991 Statements

■ As for Lewis' initial set of statements—those made to Trooper Weigel on the day following the arrest, Lewis having been properly Mirandized—his motion to suppress was based entirely on the ground that those statements were the "fruit of the poisonous tree" (*Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963)) represented by the allegedly illegal search of the vehicle. With the sole underpinning of that motion to suppress having been washed away by our ruling on the vehicle search, this added motion to suppress is left wholly without foundation. Hence Lewis' second ground for the current appeal also fails.

### Lewis' July 22, 1991 Statements

■ Unlike Lewis' two motions to suppress, which were made sufficiently in advance of trial to permit the conduct of a hearing and a ruling by the district judge, what Lewis labels as a "motion in limine" was not presented until 8:30 a.m. on the morning of trial. Nonetheless the district judge gave it his full attention: After hearing counsel's initial arguments, he reserved ruling until the government was prepared to offer the statements during the trial (to be better able to evaluate the context in which the evidence would be presented). At that time Special Agent Schmitz and Lewis testified outside of the jury's presence as to the circumstances leading to Lewis' July 22, 1991 statements, and the district judge denied the motion to exclude evidence as to those statements.

■ When it comes to a trial judge's ruling on such an evidentiary matter, we review the judge's decision only for abuse of the discretion vested in him (*United States v. Chatman,* 994 F.2d 1510, 1515 (10th Cir. 1993)). Here there is no question that Schmitz again informed Lewis of his rights and that Lewis signed the acknowledgement-of-rights form. Instead Lewis tries to make capital of the fact that Schmitz failed to have Lewis sign the waiver-of-rights portion of that same form. But the district judge's ruling necessarily accepted Schmitz' testimony that such failure was merely an oversight on his part and that Lewis' statements were wholly voluntary.

■ As the last string to his in limine bow, Lewis argues that Special Agent Schmitz' promises of consideration for Lewis' cooperation deprived his ensuing statements of their voluntary character. But Schmitz' testimony was that his only promise was to make Lewis' cooperation known to the United States Attorney's Office, and that he told Lewis that he himself could make no deals with Lewis. Again the district judge's ruling necessarily imports his crediting of that testimony. That type of limited assurance does not taint ensuing statements as involuntary (*United States v. Fountain,* 776 F.2d 878, 885 (10th Cir.1985); *United States v. Pace,* 898 F.2d 1218, 1246 (7th Cir.1990)). Again the district court's rejection of Lewis' effort to bar the statements was entirely permissible, and we uphold it as well.

### Conclusion

None of the issues preserved by Lewis at trial and tendered for our consideration calls

for upsetting his conviction. Accordingly the conviction is affirmed.