UNITED STATES of America, Plaintiff–Appellant,

v.

Tomasita EYLICIO–MONTOYA, Defendant–Appellee.

No. 94–2181.

United States Court of Appeals, Tenth Circuit.

Nov. 22, 1995.

Joseph Douglas Wilson, Department of Justice, Washington, D.C. (John J. Kelly, United States Attorney, and David N. Williams, Assistant United States Attorney, District of New Mexico, with him on the briefs), for Plaintiff–Appellant.

Stephen P. McCue, Supervisory Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant–Appellee.

Before HENRY and McKAY, Circuit Judges, and SHADUR *, Senior District Judge.

---

* Honorable Milton I. Shadur, Senior United States District Judge, Northern District of Illinois, appearing by designation.

HENRY, Circuit Judge.

The government appeals the district court's interlocutory order suppressing evidence obtained during a search of a vehicle in which the defendant-appellee Tomasita Eylicio–Montoya was a passenger. We exercise jurisdiction under 18 U.S.C. § 3731. Following the analysis of our prior panel opinion, see United States v. Eylicio–Montoya, 18 F.3d 845 (10th Cir.1994), we reverse the district court's order and remand for further proceedings.

## I. BACKGROUND

Most of the relevant facts are set forth in detail in the prior opinion, see Eylicio–Montoya, 18 F.3d at 846–48, and we summarize them briefly here. In October 1992, an informant contacted United States Customs Agent Albert Vogrinec and told him that a woman named Tammy had been hired by a man named Reuben to transport marijuana from Grants, New Mexico, to Denver, Colorado. The informant provided Agent Vogrinec with an address for Tammy, and Agent Vogrinec subsequently discovered that the defendant Ms. Eylicio–Montoya lived there. Agent Vogrinec was familiar with Ms. Eylicio–Montoya from a previous investigation of marijuana trafficking and knew that she had previously been convicted of transporting marijuana.

Customs agents began surveillance of Ms. Eylicio–Montoya's house. On November 2, 1992, they followed a brown Datsun and a white pickup truck from the residence to a motel. From their observations, the agents were able to confirm several of the details provided by the informant regarding a plan to transport marijuana. See id. at 846.

The next morning the agents observed Ms. Eylicio–Montoya, her son Joe Eylicio, and her daughter-in-law leave the motel in a blue Dodge Colt. Two men left at the same time in the white pickup. The agents followed the Dodge and the pickup a short distance west on Interstate 40. Joe Eylicio drove the Dodge; Ms. Eylicio–Montoya rode in the front seat, and her daughter-in-law rode in the back.

With assistance from New Mexico police officers, the agents stopped the two vehicles. Agent Vogrinec and a New Mexico police officer then approached the Dodge, ordered the occupants out of the vehicle, and directed them to lie on the ground. According to Agent Vogrinec, he removed his firearm from its holster, but kept it behind his back. As he approached the vehicles, Agent Vogrinec observed several burlap bags through the rear window of the Dodge. He then opened the hatchback of the Dodge, inspected the burlap bags, and confirmed that they contained marijuana.

Ms. Eylicio–Montoya was charged with possession with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D). She filed a motion to suppress the marijuana discovered in the burlap bags, arguing that the stop of the Dodge was not supported by reasonable suspicion and that her subsequent arrest was not supported by probable cause. Rec. vol. I, doc. 11. The district court granted the motion, and the government appealed.

This Court vacated the district court's order and remanded the case for further proceedings. See Eylicio–Montoya, 18 F.3d at 851. We first held that, assuming that the district court did not disbelieve the uncontradicted testimony of Agent Vogrinec, the circumstances known to customs agents established the reasonable suspicion of wrongdoing necessary to support the initial stop of the Dodge and the pickup. We noted that "a brief investigative stop only requires 'some objective manifestation that the person stopped is ... engaged in criminal activity.' " Id. at 848 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).

However, as to the reasonableness of Ms. Eylicio–Montoya's arrest under the Fourth Amendment, we found the record insufficient to make a final determination. We concluded that the evidence obtained by customs agents prior to the stop "quite clearly [fell] short of probable cause for an arrest." Id. at 849. "However," we said, "the espial of the burlap bags prior to the arrest, in addition to the facts constituting reasonable suspicion for the stop, would rise to the level of proba-

ble cause necessary to render the arrest proper." *Id.* We therefore directed the district court to determine when Agent Vogrinec saw the burlap bags. We stated that if Agent Vogrinec saw the burlap bags before ordering the occupants out of the vehicles, then there was probable cause for the arrest and the district court should deny Ms. Eylicio–Montoya's motion to suppress. On the other hand, we said, if Agent Vogrinec ordered the occupants out of the vehicles before he saw the burlap bags, "then there was no probable cause for that arrest and there may be grounds for suppressing the evidence on the basis that it was the fruit of that arrest." *Id.*

We also directed the district court to consider whether Ms. Eylicio–Montoya had standing to challenge the search of the Dodge. Observing that a passenger normally lacks standing to challenge the search of a car in which she claims neither a property nor a possessory interest, our panel opinion stated that Ms. Eylicio–Montoya could establish standing by "demonstrating some relationship to the vehicle sufficient to establish her lawful possession or control thereof." *Id.* at 851.

On remand, Ms. Eylicio–Montoya offered testimony from her son Joe Eylicio. He stated that he had borrowed the Dodge from his father and that he had loaned it to Ms. Eylicio–Montoya to get it serviced. He added that when he borrowed the car there were no burlap bags in the back and that he first noticed the bags when the agents made the stop.

After hearing Mr. Eylicio's testimony, the district court again granted Ms. Eylicio–Montoya's motion to suppress. The court first concluded that Ms. Eylicio–Montoya had "a subjective expectation of privacy in the automobile and its contents" and therefore had standing to challenge the search. Rec. vol. I, doc. 58, at 2. The court also found that "[a]ccording to credible witnesses, the agents exited their vehicles with their guns drawn and ordered the occupants to exit the vehicles and lie on the ground." *Id.* Based on this finding, the district court concluded that Ms. Eylicio–Montoya "was arrested at the time the agents exited their vehicles with

their guns drawn and ordered the occupants to exit the vehicles and lie on the ground." *Id.* Additionally, the district court found that Ms. Eylicio–Montoya's arrest "occurred prior to Agent Vogrinec's observing the sacks of marijuana in the rear of the vehicle." *Id.* Accordingly, the district court held that there was no probable cause to arrest Ms. Eylicio–Montoya and that the evidence discovered in the Dodge was the fruit of an unlawful arrest. *Id.*

The government then filed this appeal of the district court's ruling. It now argues that Ms. Eylicio–Montoya lacks standing to challenge the search of the Dodge because she did not have a reasonable expectation of privacy in the car. The government also argues that the evidence discovered in the Dodge is admissible under the inevitable discovery doctrine.

## II. DISCUSSION

In reviewing a ruling on a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous. *United States v. McSwain*, 29 F.3d 558, 560 (10th Cir.1994); *United States v. Nielsen*, 9 F.3d 1487, 1489 (10th Cir.1993). We view the evidence in the light most favorable to the prevailing party. *McSwain*, 29 F.3d at 560; *United States v. Pena*, 920 F.2d 1509, 1513 (10th Cir.1990), *cert. denied*, 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991). However, the ultimate determination of whether the challenged conduct is reasonable under the Fourth Amendment is a legal question that we examine de novo. *McSwain*, 29 F.3d at 561; *United States v. Horn*, 970 F.2d 728, 730 (10th Cir.1992). Whether a defendant has standing to challenge a search is also a legal question subject to de novo review. *United States v. Betancur*, 24 F.3d 73, 76 (10th Cir.1994).

Applying these standards, we will first consider whether Ms. Eylicio–Montoya has standing to directly challenge the search of the Dodge. Next, we will examine whether she has standing to challenge her subsequent arrest. Because we conclude that Ms. Eylicio–Montoya has standing to challenge her arrest, we will then consider whether her

arrest violated the Fourth Amendment. Finally, we will consider whether the evidence obtained from the Dodge should be suppressed as "fruit of the poisonous tree," *see Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), or whether, as the government maintains, the evidence is admissible under the inevitable discovery doctrine.

### A. Standing to Challenge the Search

■ The personal nature of Fourth Amendment rights imposes on the party seeking to suppress evidence the burden of " 'adducing facts at the suppression hearing indicating that [her] own [Fourth Amendment] rights were violated by the challenged search.' " *Eylicio–Montoya*, 18 F.3d at 850 (quoting *United States v. Skowronski*, 827 F.2d 1414, 1417 (10th Cir.1987)). Two factors are relevant: (1) whether a party has manifested a subjective expectation of privacy in the area searched, and (2) whether society is prepared to recognize that expectation as reasonable. *Id.; United States v. Erwin*, 875 F.2d 268, 270 (10th Cir.1989).

In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court considered these factors in deciding whether passengers have standing[1] to challenge vehicle searches. The Court held that a passenger who asserts neither a possessory nor a property interest in a vehicle "would not normally have a legitimate expectation of privacy" in the vehicle protected by the Fourth Amendment. *Id.* at 148–49, 99 S.Ct. at 433; *see also United States v. Lewis*, 24 F.3d 79, 81 (10th Cir.) ("*Rakas* provides the definitive teaching that a 'passenger *qua* passenger' has no reasonable expectation of privacy in a car that would permit the passenger's Fourth Amendment challenge to the search of the car."), *cert. denied,* —— U.S. ——, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994); *United States v. Martinez*, 983 F.2d 968, 973–74 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1959, 123 L.Ed.2d 662 (1993), *and cert. denied,* —— U.S. ——, 113 S.Ct. 2372, 124 L.Ed.2d 277 (1993); *United States*

*v. Jefferson*, 925 F.2d 1242, 1249 (10th Cir.), *cert. denied,* 502 U.S. 884, 112 S.Ct. 238, 116 L.Ed.2d 194 (1991); *Erwin*, 875 F.2d at 270–71. We have applied *Rakas* to conclude that passengers lack standing to challenge vehicle searches. *See, e.g., Lewis*, 24 F.3d at 81; *Jefferson*, 925 F.2d at 1249 (nonowner passenger lacked standing to challenge search even though he shared in the driving in a long-distance trip); *Erwin*, 875 F.2d at 271–72 (passenger's possession of key to rear door of car insufficient to establish standing).

■ In the instant case, with regard to her interest in the Dodge, Ms. Eylicio–Montoya has offered only Joe Eylicio's testimony that she had been allowed to drive the car prior to the stop. Such prior control of a vehicle is insufficient to establish a passenger's standing to directly challenge a search. *See Jefferson*, 925 F.2d at 1249. Similarly, neither the fact that Joe Eylicio borrowed the Dodge from the owner nor the fact that the owner permitted Ms. Eylicio–Montoya to ride in the car establishes that Ms. Eylicio–Montoya had a legitimate expectation of privacy in it. Accordingly, we conclude that the district court erred in concluding that Ms. Eylicio–Montoya has standing to directly challenge the search of the Dodge.

### B. Standing to Challenge the Arrest

Our conclusion that Ms. Eylicio–Montoya lacks standing to directly challenge the search of the Dodge does not end our inquiry. In her motion to suppress, Ms. Eylicio–Montoya challenged not only the search but also the initial stop and subsequent arrest. Our prior decisions distinguish passenger standing to directly challenge a vehicle search from passenger standing to seek suppression of evidence discovered in a vehicle as the fruit of an unlawful stop, detention, or arrest. That distinction is important to this case.

The distinction inheres in *Rakas*. As scholars and subsequent decisions have noted, the passengers in *Rakas* challenged nei-

---

1. "Standing" is really "a shorthand method of referring to the issue of whether the defendant's own Fourth Amendment interests were implicated by the challenged governmental action."

*United States v. Kimball*, 25 F.3d 1, 5 n. 1 (1st Cir.1994); *see also Eylicio–Montoya*, 18 F.3d at 850 n. 3; *Erwin*, 875 F.2d at 269–70.

ther the initial traffic stop nor their arrests. *See Rakas*, 439 U.S. at 130, 99 S.Ct. at 423 ("[W]e are not here concerned with the issue of probable cause."); *see also Kimball*, 25 F.3d at 5–6 n. 3 (1st Cir.1994) (discussing *Rakas* ); Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.3(e), at 324–25 (2d ed. 1987). As a result, *Rakas* does not foreclose a passenger's Fourth Amendment challenge to the seizure of her person:

> Does [*Rakas* ] mean that persons who are "merely passengers" (i.e., asserting neither a property nor a possessory interest in the vehicle, nor an interest in the property seized) will *never* have standing? Although Justice Rehnquist's opinion unfortunately does not even hint at a stopping point short of such an absolute rule, thus prompting some courts to give *Rakas* such an interpretation, it does not seem that *Rakas* goes this far. For one thing, it is important to note, as the concurring opinion in *Rakas* takes great pains to emphasize, that the "petitioners do not challenge the constitutionality of the police action in stopping the automobile in which they were riding; nor do they complain of being made to get out of the vehicle," so that the question before the Court was "a narrow one: Did the search of their friend's automobile after they had left it violate any Fourth Amendment right of the petitioners?" This would indicate, as two-thirds of the Court (the two concurring justices and the four dissenters) recognize, that a passenger *does* have standing to object to police conduct which intrudes upon his Fourth Amendment protection against unreasonable seizure of his person. *If either the stopping of the car or the passenger's removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit.*

LaFave, *supra*, § 11.3, at 324–25. (final emphasis added) (footnotes omitted).

This Circuit has read *Rakas* as Professor LaFave suggests. In *United States v. Hill*, 855 F.2d 664 (10th Cir.1988), we rejected the government's argument that a defendant who did not own a boat lacked standing to seek suppression of the evidence discovered in a search. The defendant had argued that his warrantless arrest violated the Fourth Amendment and that the evidence discovered in the subsequent search of the boat was the fruit of that unlawful arrest. In spite of the fact that he had no possessory or ownership interest in the boat, we concluded that the defendant had standing to challenge his own arrest and that the evidence discovered in the boat could be suppressed if the defendant established that the evidence was the fruit of his unlawful arrest. Although the *Hill* opinion did not discuss *Rakas*, it cited with approval several decisions interpreting *Rakas* to allow passengers to challenge traffic stops and to argue that evidence obtained from these stops should be excluded as fruit of the poisonous tree. *See id.* at 666 (citing *United States v. Williams*, 589 F.2d 210, 214 (5th Cir.1979), *aff'd en banc*, 617 F.2d 1063 (5th Cir.1980) *and State v. Epperson*, 237 Kan. 707, 703 P.2d 761, 770 (1985)).

Similarly, in *Erwin* we concluded that a passenger had standing to challenge a traffic stop. We reasoned that the Fourth Amendment protects against unreasonable seizures and that, in challenging a stop, the defendant was objecting to the seizure of his person. We saw "no reason why a person's Fourth Amendment interests in challenging his own seizure should be diminished merely because he was a passenger, and not the driver, when the stop occurred." *Erwin*, 875 F.2d at 270; *see also United States v. Hensley*, 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985) (noting that stopping a car and detaining its occupants constitute seizures under the Fourth Amendment); *Berkemer v. McCarty*, 468 U.S. 420, 436, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317 (1984) (acknowledging that "a traffic stop significantly curtails the 'freedom of action' of the driver and the passengers, if any, of the detained vehicle"); *Kimball*, 25 F.3d at 5 (observing that during a traffic stop, "the passenger is subjected to the demands and control of the police officer, just as the driver is"). We also concluded that if the defendant could establish that the initial stop of the car violated the Fourth Amendment, then the evidence that was

seized as a result of that stop would be subject to suppression as "fruit of the poisonous tree." *Erwin,* 875 F.2d at 269 n. 2 (citing *Wong Sun,* 371 U.S. at 484, 83 S.Ct. at 415); *see also United States v. King,* 990 F.2d 1552, 1564 (10th Cir.1993) (upholding district court's suppression of evidence as to passenger and driver because the evidence— which was discarded by the passenger while outside the vehicle—was the fruit of unlawful detention of the passenger and the driver).

Numerous federal and state courts have agreed with *Erwin*'s conclusion that a passenger may challenge a stop of a vehicle on Fourth Amendment grounds even if she has no possessory or ownership interest in the vehicle. *See, e.g., Kimball,* 25 F.3d at 5; *United States v. Roberson,* 6 F.3d 1088, 1091 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1230, 127 L.Ed.2d 574 (1994), *and cert. denied,* —— U.S. ——, 114 S.Ct. 1322, 127 L.Ed.2d 671 (1994), *and cert. denied,* —— U.S. ——, 114 S.Ct. 1383, 128 L.Ed.2d 58 (1994); *United States v. Rusher,* 966 F.2d 868, 874 n. 4 (4th Cir.), *cert. denied,* 506 U.S. 926, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992); *State v. Haworth,* 106 Idaho 405, 679 P.2d 1123, 1123–24 (1984); *State v. Eis,* 348 N.W.2d 224, 226 (Iowa 1984); *Epperson,* 703 P.2d at 770; *State v. Brickhouse,* 20 Kan. App.2d 495, 890 P.2d 353, 359 (1995); *State v. Harms,* 233 Neb. 882, 449 N.W.2d 1, 4 (1989) (collecting cases). In cases subsequent to *Erwin,* this Circuit has allowed passengers to challenge both vehicle stops and subsequent detentions. *See, e.g., Lewis,* 24 F.3d at 82 (noting that a challenge to the passenger's own detention "would of course be personal to [him], unaffected by any question as to his standing to complain about the search of the car"); *United States v. Gonzalez-Lerma,* 14 F.3d 1479, 1483 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 1862, 128 L.Ed.2d 484 (1994); *Martinez,* 983 F.2d at 974.

■ Although many of these passenger standing cases involve challenges to stops and investigative detentions, their reasoning applies to allegedly unconstitutional arrests as well. Stops, detentions, and arrests all constitute seizures under the Fourth Amendment and differ primarily in the degree to which they restrict the individual's freedom of movement. *See generally United States v. Muldrow,* 19 F.3d 1332, 1335 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 175, 130 L.Ed.2d 110 (1994); *United States v. Seslar,* 996 F.2d 1058, 1060 (10th Cir.1993). A passenger's personal interest in challenging an arrest on Fourth Amendment grounds is just as significant as her interest in challenging a stop or an investigative detention. Accordingly, we conclude that a passenger has standing to challenge a constitutionally improper traffic stop, detention, or arrest on Fourth Amendment grounds even though, when the seizure occurs, she has no possessory or ownership interest in either the vehicle in which she is riding or in its contents. A passenger does not relinquish her Fourth Amendment interest in protecting herself from unlawful seizures merely because she chooses to ride in a vehicle in which she has no possessory or proprietary interest. *See Erwin,* 875 F.2d at 270.

In this case, the government has not challenged the district court's finding that Agent Vogrinec ordered Ms. Eylicio–Montoya out of the Dodge and arrested her before he saw the burlap bags through the car's rear window. *See* Appellant's Br. at 10 n. 4. Therefore, we must accept the district court's finding that Ms. Eylicio–Montoya's arrest was not supported by probable cause. *See Eylicio–Montoya,* 18 F.3d at 849 (concluding that evidence obtained by the government prior to espial of the burlap bags fell short of probable cause). Accordingly, Ms. Eylicio–Montoya was arrested in violation of the Fourth Amendment. *See United States v. Cooper,* 733 F.2d 1360, 1364 (10th Cir.) ("An arrest is justified only when there is probable cause to believe that a person has committed or is committing a crime."), *cert. denied,* 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984). Therefore, the only remaining question is whether the evidence obtained from the search of the Dodge was the fruit of Ms. Eylicio–Montoya's unlawful arrest. *See Eylicio–Montoya,* 18 F.3d at 849.

*C. Was the Evidence Discovered in the Dodge the Fruit of Ms. Eylicio–Montoya's Unlawful Arrest?*

■ Evidence discovered by the police after a Fourth Amendment violation is not

automatically subject to suppression under the exclusionary rule. *See Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975); *King,* 990 F.2d at 1563–65; *United States v. Carson,* 793 F.2d 1141, 1147–48 (10th Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986). If a Fourth Amendment violation has occurred, the court must determine " 'whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417 (quoting Maguire, *Evidence of Guilt* 221 (1959)). Because the question is fact-intensive, the district court's findings must be upheld unless they are clearly erroneous. *King,* 990 F.2d at 1563.

■ Courts have identified several circumstances in which evidence obtained following a Fourth Amendment violation is not subject to suppression. *See United States v. Griffin,* 48 F.3d 1147, 1150 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2630, 132 L.Ed.2d 870 (1995). First, the connection between the violation and the discovery of the evidence may " 'become so attenuated as to dissipate the taint.' " *United States v. Romero,* 692 F.2d 699, 704 (10th Cir.1982) (quoting *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939)). Second, illegally seized evidence may be admitted if it was also lawfully obtained through an independent source. *Id.* (citing *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920)); *see also Murray v. United States,* 487 U.S. 533, 536–44, 108 S.Ct. 2529, 2532–37, 101 L.Ed.2d 472 (1988) (discussing independent source rule). Third, "when ... the evidence in question would inevitably have been discovered without reference to the police error or misconduct, ... the evidence is admissible." *Nix v. Williams,* 467 U.S. 431, 448, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377 (1984). These limitations on the scope of the exclusionary rule insure that the police and the prosecution are not put in a worse position than they would have been in if the Fourth Amendment viola-

tion had not occurred. *Id.* at 443–48, 104 S.Ct. at 2508–11.

■ The third of these limitations is generally referred to as the "inevitable discovery rule." *See* LaFave, *supra,* § 11.4(a) at 378–88. Under this rule, the government has the burden of proving by a preponderance of the evidence that the evidence in question would have been discovered in the absence of the Fourth Amendment violation. *Nix,* 467 U.S. at 444 n. 5, 104 S.Ct. at 2509; *United States v. Maestas,* 2 F.3d 1485, 1491 (10th Cir.1993); LaFave, *supra,* § 11.4(a), at 384.

We have applied the inevitable discovery rule to allow the admission of evidence in circumstances similar to those in the instant case. In *Romero,* the court concluded that police officers had the reasonable suspicion necessary to support the initial stop of a van, but did not have probable cause to arrest its occupants until an officer smelled marijuana when he opened a door of the van to search for weapons. There was some evidence that, prior to hearing the first officer announce that he smelled marijuana in the van, another officer reached into the pocket of one of the defendants and discovered a packet of marijuana. That defendant argued that the search of his pocket exceeded the permissible limits of a *Terry* pat-down search for weapons. The *Romero* court found this challenge to the scope of the search irrelevant. It reasoned that the marijuana packet would have been inevitably discovered after the first officer lawfully detected the marijuana while conducting the weapons search of the van. "The discovery of the marijuana in the van provided probable cause to arrest [the defendants], and upon arrest the officers unquestionably would have searched Romero and discovered the marijuana in his pocket." *Romero,* 692 F.2d at 704. We have applied the inevitable discovery rule in cases subsequent to *Romero. See, e.g., United States v. Horn,* 970 F.2d 728, 732 (10th Cir.1992).

In *United States v. Bentley,* 29 F.3d 1073 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 604, 130 L.Ed.2d 515 (1994), the Sixth Circuit reached a similar conclusion. After receiving information from an informant about firearms violations, law enforcement

officials stopped a car, approached with weapons drawn, and immediately placed the occupants under arrest. After making the arrests, an officer noticed a partially open garbage bag containing firearm boxes on the floor of the car. The government conceded on appeal that the officers lacked probable cause to make the arrests when they first approached the car. However, the government contended that the stop was supported by reasonable suspicion and that the search of the car resulted from the observation of the firearm boxes during a lawful stop rather than from an unlawful arrest. The Sixth Circuit agreed, concluding that the defendants' motion to suppress the evidence discovered in the car had been properly denied.

■■■ In this case, the government contends that, just as in *Romero* and *Bentley,* the marijuana in the burlap bags in the Dodge would inevitably have been discovered by customs agents even if Ms. Eylicio–Montoya had not been arrested immediately after the stop.[2] The government characterizes the search of the Dodge as the fruit of a lawful *Terry* stop rather than the fruit of an unlawful arrest.

The government's argument is supported by the record. We have previously held that, assuming that the district court did not disbelieve the uncontradicted testimony of Agent Vogrinec, the evidence obtained by customs agents established reasonable suspicion to stop the Dodge and the pickup. *See Eylicio–Montoya,* 18 F.3d at 849. Further development of the record has provided no basis for questioning Agent Vogrinec's testimony on this issue. In particular, although Ms. Eylicio–Montoya argued on remand that she was arrested before Agent Vogrinec saw the burlap bags, she did not challenge the district court's findings regarding the evidence obtained by customs agents prior to

the stop (e.g. Agent Vogrinec's receiving information from the informant, the confirmation of some of the informant's predictions, and the fact that she had been involved in a drug investigation in 1990). Moreover, the district court did not modify these initial findings regarding the evidence obtained prior to the stop. *Compare* Rec. vol. I, doc 58 *with* Rec. vol. II at 29–31. These initial findings, combined with the fact that the court did not modify these findings on remand, establish that the agents' initial stop of the Dodge and the pickup was supported by reasonable suspicion. *Cf. United States v. Melendez–Garcia,* 28 F.3d 1046, 1049–51 (10th Cir.1994) (Information provided by informant, informant's correct prediction of suspects' activities, and suspicious nature of those activities—including driving cars in tandem—established reasonable suspicion.); *United States v. Rutherford,* 824 F.2d 831, 833 (10th Cir.1987) (Information from anonymous informant and confirming observations by law enforcement officers established reasonable suspicion.).

Because the agents had reasonable suspicion to make the initial stop, the act of walking toward the vehicles (although not the act of immediately placing the occupants under arrest) was also lawful. Moreover, Agent Vogrinec's testimony that he saw the burlap bags as he approached the vehicles is unrebutted, and there is no indication that the burlap bags would have been any less visible to customs agents if the vehicles' occupants had not been placed under arrest immediately.

Accordingly, we conclude that the government has established by a preponderance of the evidence that if Ms. Eylicio–Montoya had not been prematurely arrested, customs agents would have observed the burlap bags

---

2. Ms. Eylicio–Montoya contends that the government did not raise the inevitable discovery defense below and that, as a result, this Court should not consider it on appeal. Our review of the record indicates that Ms. Eylicio–Montoya is partially correct: the government did not expressly invoke the inevitable discovery doctrine in the district court proceedings. However, after the remand to the district court, the government did argue that the initial stop of the Dodge was supported by reasonable suspicion and that

Agent Vogrinec's observation of the burlap bags established probable cause that the Dodge contained contraband, thus justifying the search. *See* Rec. vol. I, doc. 41. Because these contentions constitute the gist of the inevitable discovery argument on appeal, the government's failure to refer to the doctrine in the district court proceedings is not dispositive. We therefore conclude that the issue of inevitable discovery is properly before us.

during the course of a lawful *Terry* stop. Just as in *Romero* and *Bentley,* the discovery of the challenged evidence was an inevitable consequence of a proper *Terry* stop rather than the fruit of an unlawful arrest. The subsequent search of the Dodge did not result from the exploitation of information obtained through an illegal arrest but rather from an observation that the agents would have made had there been no Fourth Amendment violation. *Cf. United States v. Garza,* 10 F.3d 1241, 1246 (6th Cir.1993) (evidence obtained during lawful *Terry* stop established probable cause for arrest and search); *United States v. Nargi,* 732 F.2d 1102, 1105–07 (2d Cir.1984) (same). Therefore, the district court's conclusion that the evidence discovered in the Dodge constituted the fruit of an unlawful arrest is clearly erroneous.

## III. CONCLUSION

For the reasons set forth above, we VACATE the district court's order granting Ms. Eylicio–Montoya's motion to suppress and REMAND this case to the district court for further proceedings consistent with this opinion.