**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 1 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RICARDO MENDOZA,

    Defendant-Appellant.

No. 99-8016

District of Wyoming

(D.C. NO. 97-CR-125-2B)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **MCKAY**, and **HENRY**, Circuit Judges.

---

On November 20, 1997, Ricardo Mendoza was indicted by a federal grand

jury in Cheyenne, Wyoming. He was charged with possession of marijuana with

intent to distribute and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1)

and 841(b)(1)(C) and 18 U.S.C. § 2 as well as possession of cocaine with intent to

distribute and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(B). After the district court denied his motion to suppress physical

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

evidence, Mr. Mendoza entered conditional pleas of guilty to both counts, preserving his right to appeal the denial of his suppression motion.

On appeal, Mr. Mendoza argues that he was illegally detained in violation of the Fourth Amendment after the police issued a traffic citation to Mr. Campos-Campos, the automobile driver. Thus, he argues, the district court erred by denying his motion to suppress evidence found during the subsequent search of the automobile. Because we agree with the district court's determination that the evidence was not the product of an unlawful detention, we affirm the denial of his motion to suppress.

## I.    BACKGROUND

Ricardo Mendoza and co-defendant David Campos-Campos were traveling east on I-80 near Laramie, Wyoming, when they were spotted by Wyoming Highway Patrol Officer David Chatfield. Due to the make of their vehicle—a Crown Victoria with a large trunk and tinted windows—and its California license plates, Officer Chatfield decided to follow and observe Mr. Campos-Campos and Mr. Mendoza. His radar indicated the vehicle was traveling ninety-one miles per hour, so Officer Chatfield pursued and stopped it at 10:51 a.m.

Officer Chatfield approached the driver's side of the car and explained he stopped the vehicle for speeding. The driver, Mr. Campos-Campos, spoke in

Spanish to Mr. Mendoza, who informed Officer Chatfield that Mr. Campos-Campos did not speak English.

Through translation, Officer Chatfield requested and received the driver's license and registration for the automobile. Although the name on Mr. Campos-Campos' driver's license was Alberto Perez, the address matched that on the vehicle registration. He claimed he was unable to then recall the vehicle owner's name. Officer Chatfield requested identification from the passenger, then returned to his patrol car with the documents.

While awaiting an NCIC and license plate checks, Officer Chatfield requested the assistance of Officer Dyer, fluent in Spanish. Primarily due to Mr. Campos-Campos' nervousness, Officer Chatfield suspected drug trafficking, so he also requested a canine unit. Because the NCIC report came back negative and the license plate check revealed that the vehicle had not been reported stolen, Officer Chatfield prepared the traffic citation.

After the canine unit arrived approximately ten minutes later, Officer Chatfield approached the driver's side of the vehicle. When he arrived, Mr. Campos-Campos accurately volunteered the name of the owner and admitted that he understood some English. Officer Chatfield delivered a copy of the citation, an envelope, and a court slip, then explained the items in English. He then asked

Mr. Campos-Campos, in English, if he understood what he had been told. Mr. Campos-Campos responded affirmatively.

Officer Chatfield then stated, "Okay. You're good to go." Rec. vol. II, at 28. He asked if Mr. Campos-Campos had any questions. Mr. Campos-Campos replied, "No." Id. When asked, Mr. Campos-Campos expressed a willingness to answer additional questions. The patrolman then asked whether the occupants of the vehicle possessed any drugs or large sums of money. Mr. Campos-Campos answered, "No." Id. at 29. Officer Chatfield then inquired, "Do you mind if I search your car for drugs and money?" Id. Mr. Campos-Campos did not object, and "popped the trunk with the button." Id. The exchange was recorded by Officer Chatfield, and the District Court found "that the officers went out of their way to insure that miscommunication did not occur and that consent was freely given." Rec. vol. I, doc. 44, at 5 (Order Denying Defendants' Motion to Suppress filed May 29, 1998) [hereinafter Order].

The dog failed to alert, and Officer Chatfield found no drugs in the trunk. At the same time, Officer Dyer asked, in English and from the passenger side, if he could look in the backseat. Mr. Mendoza "turned around to his right and over his right shoulder unlocked the back door on the right side," but said nothing. Rec. vol. II, at 85. Mr. Campos-Campos gave no reaction to Officer Dyer's

question.  See id. at 97.  Officer Dyer entered the back seat area, tugged at the

back seat, and saw packages of contraband.

The arrest took place at 11:59 a.m.  A later search of the automobile

revealed approximately twelve bricks of marijuana behind the seat, as well as four

bricks of cocaine and one brick of marijuana in the spare tire.

## II.    DISCUSSION

Mr. Mendoza claims that the officers detained him in violation of the

Fourth Amendment after issuing the traffic citation.  He contends the discovery of

the drugs was the product of that illegal detention and that the evidence must be

suppressed as "fruit of the poisonous tree."

When we review an order denying a motion to suppress, we consider the

evidence in the light most favorable to the government and accept the district

court's factual findings unless they are clearly erroneous. See United States v.

Gama-Bastidas, 142 F.3d 1233, 1237 (10th Cir. 1998).  The reasonableness of the

search, however, is a question of law reviewed de novo.  See id.

A passenger has no reasonable expectation of privacy in an automobile

when that passenger asserts neither a property or possessory interest in the vehicle

nor any interest in the items seized during an automobile search.  See Rakas v.

Illinois, 439 U.S. 128 (1978).  Without such an expectation of privacy, the

passenger lacks standing to challenge the search. See United States v. Eylicio-Montoya, 70 F.3d 1158, 1162 (10th Cir. 1995); United States v. Erwin, 875 F.2d 268, 271 (10th Cir. 1989).

Mr. Mendoza has not established a reasonable expectation of privacy in the automobile. Neither does he claim an interest in the seized drugs. Thus, he lacks standing to contest the search directly. See Eylicio-Montoya, 70 F.3d at 1162.

Nevertheless, a passenger does have standing to "challenge a constitutionally improper traffic stop, detention, or arrest on Fourth Amendment grounds even though, when the seizure occurs, she has no possessory or ownership interest in either the vehicle in which she is riding or in its contents." Id. at 1164.

> We "distinguish passenger standing to directly challenge a vehicle search from passenger standing to seek suppression of evidence discovered in a vehicle as the fruit of an unlawful stop, detention, or arrest." Eylicio-Montoya, 70 F.3d at 1162. If the physical evidence found in the vehicles was the fruit of the defendants' unlawful detention, it must be suppressed. Id. at 1162-64; United States v. Miller, 84 F.3d 1244, 1250 (10th Cir. 1996). This requires a two part inquiry: first, whether the defendants were unlawfully detained, and second, whether the discovered evidence was the fruit of that unlawful detention. Miller, 84 F.3d at 1250. Only if both of those questions are answered in the affirmative will the physical evidence found in the vehicles be suppressed.

United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996).

Mr. Mendoza acknowledges the legality of the initial traffic stop, but contends that he was unlawfully detained after the traffic citation was issued. We

recently described the circumstances under which the continued questioning of a vehicle's occupants becomes an unlawful detention:

> A law enforcement officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof of entitlement to operate the car, the driver must be allowed to proceed without further delay for additional questioning. Further questioning is permissible, however, if (1) during the course of the traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity; or (2) the driver voluntarily consents to the officer's additional questioning. Under the first set of circumstances, a Fourth Amendment seizure has taken place, but it is reasonable and consequently constitutional. Under the second set of circumstances, there is no seizure, and hence the Fourth Amendment's strictures are not implicated. However, if the officer continues to question the driver in the absence of either set of circumstances, any evidence derived from that questioning (or a resulting search) is impermissibly tainted in Fourth Amendment terms.

United States v. Elliott, 107 F.3d 810, 813 (10th Cir. 1997) (internal quotations and citations omitted).

In the present case, Officer Chatfield delivered and explained to Mr. Campos-Campos the documents relating to the traffic stop. Mr. Campos-Campos stated that he understood what he had been told, so Officer Chatfield stated, "Okay. You're good to go." Rec. vol. II, at 28. He asked whether Mr. Campos-Campos had any questions, to which Mr. Campos-Campos replied, "No." Id. Officer Chatfield then asked, "Can I ask you some questions?" and Mr. Campos-Campos replied, "Sure. It's okay. Yeah." Id. at 28-29. In a post-arrest interview, Mr. Mendoza acknowledged that Mr. Campos-Campos agreed to

-7-

answer the additional questions.  Id. at 106-107.   Because the driver consented to extending the encounter, there was no unlawful detention of Mr. Campos-Campos.  See Elliott, 107 F.3d at 813.

Even if in spite of the driver's consent, Mr. Mendoza was unlawfully detained, the evidence he seeks to suppress was not the fruit of that detention. See Miller, 84 F.3d at 1250 ("If a detention was illegal, evidence obtained as a result of that illegal detention must be excluded to the extent it was the fruit of the poisonous tree.").  "Illegally seized evidence may be admitted if it was also lawfully obtained through an independent source." Eylicio-Montoya, 70 F.3d at 1165 (citing United States v. Romero, 692 F.2d 699, 704 (10th Cir. 1982)).  In the present case, the district court determined the officers legally obtained the evidence through Mr. Campos-Campos' voluntary consent to search the vehicle.

The District Court determined "consent to the search was freely and voluntarily given."  Order at 4.  In so holding, the District Court noted "interviews with both Defendants following their arrest revealed that they had understood the search requests and had freely consented." Id. at 5.  Having reviewed the record, we agree with the District Court.  Moreover, Mr. Mendoza voiced no objection to Mr. Campos-Campos' consent (in fact, he assisted in the search by unlocking the rear door); therefore, he may not argue that the seizure of the contraband violated his Fourth amendment rights.  See United States v.

Langston, 970 F.2d 692, 698 (10th Cir. 1992) (by remaining silent while the driver gave permission to search, passenger gave officer no reason to believe he had any interest in the area searched). Thus, even had the police unlawfully detained Mr. Mendoza, the evidence was lawfully discovered through an independent source—Mr. Campos-Campos' voluntary consent to search the vehicle.

## III. CONCLUSION

In summary, we agree with the district court that the evidence discovered in the search of the automobile was not the product of Mr. Mendoza's illegal detention. Accordingly, we AFFIRM the denial of the motion to suppress.

ENTERED FOR THE COURT

Robert H. Henry
Circuit Judge