**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 1 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SALVADOR MENDOZA-RAMOS,

    Defendant-Appellant.

No. 00-1349

(D.C. No. 00-CR-108-S)
(D.Colo.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE** and **MURPHY,** Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In this direct criminal appeal, Salvador Mendoza-Ramos appeals the district court's denial of his motion to suppress. We affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

The facts are set forth in the Plea Agreement and Stipulation of Facts. On March 9, 2000, highway patrol officers stopped a vehicle near Richfield, Utah. The occupants of the vehicle were Juan Gomez and Francisco Cortez. After consent was obtained, a search of the vehicle revealed approximately five pounds of methamphetamine. Gomez and Cortez told the officers they were transporting the drugs to Denver, Colorado, for delivery to a person named Chava, and agreed to cooperate in attempting a controlled delivery of the drugs. Cortez placed two calls to one of two telephone numbers they had been instructed to call and requested money to repair their vehicle. The officers verified that the listings for the telephone numbers were in the name of Mendoza-Ramos. Both of the wire money transfers subsequently received for vehicle repairs were identified as sent by Mendoza-Ramos. Cortez again contacted Mendoza-Ramos by telephone on March 11. Mendoza-Ramos asked Cortez if the "things" were still with him. Mendoza-Ramos requested that Cortez and Gomez drive to his house, but Cortez stated he did not know how to get there. Mendoza-Ramos met the occupants at a Burger King in Denver and they followed Mendoza-Ramos to his house, which was under surveillance. The three men went into the house. Shortly thereafter, Mendoza-Ramos and Gomez came out of the house and Gomez retrieved the drugs from the vehicle. Mendoza-Ramos was arrested. The officers *Mirandized* Mendoza-Ramos in Spanish and he signed a Spanish *Miranda* form.

Mendoza-Ramos agreed to answer questions and signed a consent to search form, which was in Spanish, for his house and two vehicles on his property. Officers seized more than 1.5 kilograms and less than 5 kilograms of a substance containing a detectable amount of methamphetamine.

Mendoza-Ramos filed a motion to suppress "the evidence seized from [his] residence, along with all derivative evidence, including statements made by the defendant following his illegal arrest in this case." R. Vol. I, Doc. 18 at 1. He argued the circumstances linking him to the methamphetamine in the vehicle "gave agents, at most, a mere suspicion about his involvement in illegal activity." Id. at 3. The district court denied the motion.

Mendoza-Ramos entered a conditional plea of guilty to one count of aiding and abetting interstate travel with intent to promote an unlawful activity, namely possession with intent to distribute methamphetamine, in violation of 18 U.S.C. § 1952(a)(3) and § 2. Mendoza-Ramos reserved the right to appeal the district court's denial of his motion to suppress. He was sentenced to five years' imprisonment.

II.

On appeal, Mendoza-Ramos contends the information known to the officers at the time of his arrest was not sufficient to warrant a belief that he had committed or was in the process of committing a crime. He "does not contest any factual findings made by the district court in this case." Br. at 14.

3

In reviewing a motion to suppress, "[w]e review the question of whether probable cause to arrest existed at the time of the arrest de novo." United States v. Allen, 235 F.3d 482, 488 (10th Cir. 2000); see also United States v. Edwards, 242 F.3d 928, 933 (10th Cir. 2001) ("The ultimate determination of the reasonableness of a warrantless search or seizure under the Fourth Amendment is a determination of law that we review de novo.").

"'To be lawful, a warrantless arrest must be supported by probable cause to arrest.'" Edwards, 242 F.3d at 933-34 (quoting United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir. 1998)). "To determine if probable cause for a warrantless arrest exists, we ask whether at the time of the arrest, the facts and circumstances within the arresting officer's knowledge were sufficient to justify a prudent officer in believing the defendant was engaged in illegal activity." United States v. Patten, 183 F.3d 1190, 1195 (10th Cir. 1999).

> An officer has probable cause to arrest if, under the totality of circumstances, he "learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." Although probable cause need not be based on facts sufficient for a finding of guilt, it requires "more than mere suspicion." Association with persons suspected of criminal conduct or nearness to the site of illegal activity does not alone suffice.

United States v. Dozal, 173 F.3d 787, 792 (10th Cir. 1999) (citations omitted). "[I]n a criminal case, the burden rests on the government to establish probable cause in

4

support of a warrantless arrest." Romero v. Fay, 45 F.3d 1472, 1476 n.1 (10th Cir. 1995).

Mendoza-Ramos argues the "claims of the cooperating witnesses should not have been considered as reasonably trustworthy evidence," Br. at 14, and the officers "failed to independently corroborate basic claims" by the occupants of the vehicle, Br. at 17. However, in its oral ruling on the motion to suppress, the district court stated:

> It appears that [a] reasonable man would, based on the trustworthy information, and that's the information in the personal knowledge of the officers, and I want to emphasize that, the Court has carefully omitted from consideration matters which were dependent upon statements which are strictly statements made by the individuals which were not supported by trustworthy information in the personal knowledge of the officers in question. . . . . [T]he officers by their own independent investigation and observation had sufficient information in this Court's opinion to warrant a prudent man believing that the defendant here . . . was committing or had committed a criminal offense.

R. Vol. II at 100-01.

Mendoza-Ramos argues this case is similar to United States v. Eylicio-Montoya, 70 F.3d 1158 (10th Cir. 1995). From his statement that "far less information was provided" by the occupants of the vehicle, "and even less confirmed," Br. at 21, it appears he believes Eylicio-Montoya was decided on the grounds of confirmation of an informant's testimony. However, a reading of the case illustrates that was clearly not the basis for the court's decision that defendant's arrest was not supported by probable cause.

5

In Eylicio-Montoya, an informant contacted a customs agent and told him a woman had been hired to transport marijuana. The informant provided the woman's address and the agent discovered that defendant lived at that address. Surveillance was established. Authorities observed vehicles travel from the address to a motel. When the vehicles left the motel, agents stopped them and ordered the occupants out of the vehicles. The agents then observed several burlap bags through the rear window of a vehicle, opened the vehicle, inspected the bags, and confirmed they contained marijuana. Defendant moved to suppress the marijuana, arguing the stop was not supported by reasonable suspicion and her subsequent arrest was not supported by probable cause. On appeal, the government did not challenge the district court's finding that defendant was ordered out of the vehicle and arrested before the officer saw the burlap bags through the window. Because of the unchallenged finding, this court held that "we must accept the district court's finding that Ms. Eylicio-Montoya's arrest was not supported by probable cause." Id. at 1164. We conclude that Eylicio-Montoya is distinguishable from the case before us.

Mendoza-Ramos also argues the authorities "did nothing to ascertain the identify of 'Chava.'" Br. at 18. However, the officers verified that the listings for the telephone numbers for Chava given to the occupants of the vehicle were in the name of Mendoza-Ramos. Both of the wire money transfers received for vehicle repairs as a result of telephone calls to the numbers were identified as sent by Mendoza-Ramos.

6

Mendoza-Ramos contends his warrantless arrest cannot be justified based only on verification of innocent details. He cites United States v. Mendonsa, 989 F.2d 366 (9th Cir. 1993), and United States v. Gibson, 928 F.2d 250 (8th Cir. 1991). However, those cases concerned whether there was probable cause for search warrants to issue.

Finally, Mendoza-Ramos contends his mere association with two drug dealers could not support a finding of probable cause. "Association with persons suspected of criminal conduct or nearness to the site of illegal activity does not alone suffice." Dozal, 173 F.3d at 792. However, the evidence against Mendoza-Ramos established far more than mere association. The totality of the circumstances known at the time of the arrest established probable cause. See Vasquez-Pulido, 155 F.3d at 1216-17.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge